## SHIRLEY *v.* BYRD; *et vice versa.*

1. The grounds of the motion for a new trial based upon the admission of evidence should state what objection was made thereto when it was offered at the trial, and should affirmatively show that the objection was then urged; otherwise no question is raised for determination by the court. *McFarland* v. *Darien &c. R. Co.,* 127 *Ga.* 97 (56 S. E. 74); *Hill* v. *Chastain,* 138 *Ga.* 750 (75 S. E. 1130).

2. The failure of the court to give in charge the principles of law as complained of in the amended motion was not error. These principles were fully covered by the charge of the court. The exceptions to the charge are without merit.

3. The verdict is supported by the evidence, it has been approved by the trial judge, and this court will not set aside the verdict on the ground that it is contrary to the evidence.

Nos. 5173, 5204. JULY 17, 1926.

Equitable petition. Before Judge Tarver. Gordon superior court. November 7, 1925.

*F. A. Cantrell* and *J. M. Lang,* for Shirley.

*M. B. Eubanks* and *C. Morgan Copeland,* contra.

RUSSELL, C. J. Mrs. Addie Byrd filed a petition for injunction against L. F. Shirley, and therein claimed damages for trespass. The trial judge granted an interlocutory injunction. On the trial of the case the jury returned a verdict finding in favor of an injunction and $10 damages. The defendant filed a motion for a new trial, which was overruled, and he excepted to this judgment. In her petition the plaintiff alleged that she was the owner of a tract of land described as twelve acres off of the southeast corner of land lot No. 1 in the 23d district in the 2d section of Gordon

---

Appeal and Error, 3 C. J. p. 967, n. 42; 4 C. J. p. 864, n. 34.
Trial, 38 Cyc. p. 1711, n. 19.

County, and had been in possession thereof for more than twenty years; that her possession had been actual, notorious, adverse and peaceable and under a bona fide claim of right; that the defendant had lately entered upon said tract of land illegally and wrongfully and cut and removed therefrom twenty cords of wood of the value of $1 per cord, and would continue to cut and remove timber therefrom unless restrained by the court; that he had cut the timber from approximately two acres of said land, and would continue to cut and remove timber therefrom; that he entered upon said land almost daily, contrary to petitioner's will and consent, and had plowed over a portion of said land; that petitioner had already had to defend two cases instituted by the defendant; and that, to avoid a multiplicity of suits and to prevent continued trespass, it was necessary for her to appeal to the court for relief from such acts. The plaintiff amended her petition by presenting a plat of the property. The defendant denied all the material allegations of the petition. By way of cross-action the defendant set up that he owned and was in possession of the described land; that the line between the defendant and the tract upon which the plaintiff lives is the run of Salacoa Creek; that no part of the land in possession of the plaintiff extends across said creek; that the defendant and his predecessors in title have owned and claimed said land up to said creek and have been in possession thereof for a long term of years, and plaintiff has no right or title to any of said land across the creek from her land.

1. On the trial the plaintiff tendered in evidence a deed from one Ellis, as administrator of W. M. Townsend, to William Thompson, plaintiff's deceased husband, dated January 13, 1896, conveying lot of land No. 36 in the 23d district and 2d section of Gordon County, lot of land No. 2 in said district and section, and twelve acres of the southeast corner of lot No. 1 in said district and section, containing in all 232 acres, and known as all of the plantation of W. M. Townsend, deceased. Plaintiff also tendered in evidence a plat of the land in controversy, which showed that a part of said land was on the south side of Salacoa creek and part on the north side. She claimed that the land was enclosed as early as 1875 with a fence by Townsend or his predecessors in title; that her husband, William Thompson, bought the land in 1896; that she had been in possession of said land ever since, exercising acts

of ownership over same; that this fence remained for four or five years after she went into possession, but was never kept up after the stock law came into effect four or five years later. She also showed by Byrd, her present husband, that after Holtzclaw, the predecessor in title of Shirley, the defendant, as to the lands in dispute, went into possession, there was an agreement between Byrd and Holtzclaw that the old fence-row was the line, and that Holtzclaw recognized the fence-row as the line. Holtzclaw, as a witness for the defendant, denied this testimony. The plaintiff introduced in evidence a letter from Holtzclaw to the defendant, in which Holtzclaw set out that the line ran as the plaintiff claimed, along the old fence-row. The defendant insisted that the fence was put on his land by the consent of his predecessor in title; and the evidence as to this is conflicting. The jury found against this contention, and the evidence is abundant to support the finding. The evidence showed that the plaintiff had been in possession of the land in dispute for at least fifty years, and that the fence remained as to the line until Holtzclaw came into possession of the adjoining tract. If this be true, title by prescription ripened, and she has title to the land. She insists that she has continued in possession up to the present time. The deed executed by Ellis, as administrator, describes the land as twelve acres off of the southeast corner of lot No. 1, the entire tract conveyed being 232 acres and all known as the plantation of W. M. Townsend, deceased. This being a general description, it could be applied to the land, and it could be shown what part of lot No. 1 this 12 acres was. The evidence is in direct conflict upon many material issues; but the jury having returned a verdict in favor of the plaintiff, which verdict has the approval of the trial judge, this court will not set aside the verdict on the ground that it is contrary to the evidence.

2. The first special ground of the motion for a new trial complains that the court incorrectly stated the contentions of the plaintiff in his charge to the jury. An examination of the record discloses that the court fairly stated the contentions of the parties to the jury, and this ground of the motion can not be sustained.

3. The second special ground of the motion complains that the judge erred in charging the jury upon perfect title. The defendant did not put in evidence a perfect paper title. He in-

troduced in evidence a deed from the New England Mortgage Company to Holtzclaw and a deed from Holtzclaw to Shirley, but it does not appear that the mortgage company ever had any title to the property or was ever in possession. The defendant can not complain of this charge.

4. The third and fourth special grounds of the motion for a new trial complain of the charge of the court upon prescriptive title, and are without merit.

5. The fifth ground sets out a colloquy between the court and counsel for the defendant as to certain questions asked by plaintiff's counsel. At the conclusion of this colloquy counsel for plaintiff changed his question, and asked: "Who exercised rights of ownership over this twelve acres up to that fence there?" Answer: "We did." Byrd, the husband of the plaintiff, was on the stand. It does not appear that at the time this evidence was given there was any objection urged to it, and for that reason there was valid assignment of error.

6. The ninth ground of the motion complains of the failure of the court to tell the jury that the issue was as to the dividing line between the twelve-acre tract of plaintiff and the one hundred and eighty-five-acre tract of defendant. By reference to the charge, the court fully explained to the jury the contentions of each party; and besides, there was no written request for any such charge.

7. The tenth ground of the motion complains that while the plaintiff was on the stand she was asked by her counsel, "Was there ever any administration of Mr. Thompson's estate?" to which she answered, "No." Whereupon counsel for defendant stated that there was better evidence than that; whereupon the court stated that it thought not. The statement of counsel for defendant was not an objection as appears of record, and all that appears is the statement quoted above as to the objection. This evidence was immaterial, and was not necessary to plaintiff's case. The plaintiff in error cites the decision in *Gornto* v. *Wilson*, 141 *Ga.* 597 (81 S. E. 860). That was a suit by heirs to recover real estate, and the burden was upon them to show that there was no administration. It was a part of their case. Whether or not there was an administration of the estate of the deceased husband would make no difference if the plaintiff had been in possession of the property since his death, and especially if she held it as a year's

support. She swore this, and there was no objection to the testimony.

8. In the eleventh ground of the motion it appears that counsel for the defendant objected to certain evidence as immaterial and irrelevant. It has been ruled by this court that such objection amounts to nothing. Counsel should have stated how it was immaterial and irrelevant, and how it was harmful and hurtful.

9. In the twelfth ground it appears that the defendant offered T. H. Kiker as a witness, and examined him as follows: Question: "Where did you live in reference to this land in controversy?" Answer: "I suppose it was something like a quarter." Q.: "How long have you lived there?" A.: "Born and raised there." Q.: "Do you know where the line is?" A.: "I know where the line is between me and him." Q.: "Well, between him and Shirley?" A.: "I know the east and west line; the creek was always considered the line." On motion of counsel for plaintiff this evidence was excluded. It did not appear that this witness had ever been in possession of the property, or who it was that considered the creek the line; besides, the defendant had shown by a number of other witnesses, who pretended to know, this same evidence. In any event, if the exclusion of this evidence was error, it is not a sufficient ground to set aside this verdict. The plaintiff alleged in her petition that she was the owner of twelve acres of the southeast corner of land lot No. 1, in the 23d district and second section of Gordon County, and had been in possession thereof for more than twenty years. The defendant in his answer denied this paragraph, but further answered: "That he does own and is in possession of a certain tract of land; that the line between this defendant and the tract on which plaintiff lives is the run of Salacoa Creek; that the plaintiff lives across the creek from this defendant's land, but that the plaintiff does not own the full and complete title to said land, but only an interest therein, according to information, but that no part of tract in possession of said plaintiff extends across said creek; that this defendant and his predecessors in title have owned and claimed said land up to the said creek and been in possession thereof for a long term of years." The defendant put in evidence a deed from Holtzclaw to Shirley, the defendant, dated December 4, 1911, conveying the following described lands: "All that parcel of land lying and being in the

23d district and second section of Gordon County, all of lot No. 1, also all of lot No. 324 in the 24th district and second section lying on the south side of Salacoa Creek, both of said lots containing in all one hundred and eighty-five acres, more or less; also fifteen acres more or less off of lot No. 2 in the 23d district and second section of Gordon County, said fifteen acres being on the southeast side of Salacoa Creek, the old original creek run to be the line." It will be noted that the fifteen acres off of lot No. 2 has for its boundary the original creek run. The damage claimed by the plaintiff was on lot No. 1. The plat introduced by the plaintiff shows that a portion of lot No. 1, that is the southeast portion, extends across Salacoa Creek; and while the defendant insists that the run of the creek is the line, from the deed he puts in evidence this boundary applies to a portion off of lot No. 2; and furthermore all the evidence shows that the plaintiff has been in possession of that portion of lot No. 1 on the south side of Salacoa Creek, and to which the defendant has made no claim; and as it appears from the evidence the defendant has been litigating cases other than the one alleged against him, to say the least of his answer, it is evasive. The plaintiff by her deed claims twelve acres off of the southeast corner of lot No. 1 along with other lands, all known as the plantation of W. M. Townsend, deceased. The defendant insists that this description would only convey a square in the southeast corner, but the property being sold as all of the plantation of W. M. Townsend, deceased, the description could be applied to the lands, and they can be identified, as the evidence shows that at the time this sale was made Thompson had this land enclosed with a fence. See *Hollywood Cemetery Corporation* v. *Hudson,* 133 *Ga.* 274 (65 S. E. 777); *Bennett* v. *Green,* 156 *Ga.* 575 (119 S. E. 620); *Wellmaker* v. *Wheatley,* 123 *Ga.* 204 (51 S. E. 436); *Johnson* v. *McKay,* 119 *Ga.* 196 (45 S. E. 992, 100 Am. St. R. 166). The witness Byrd testified: "I remember when Holtzclaw and I got a surveyor to run the line between our home place. We started over here at this ditch [indicating] and run through here to this line here; and I asked him where he thought the line was, and he said that people told him this fence-row was the line. He sold his timber down to fence-row. We did not run that line; we just agreed on the fence-row as the line. He sold his timber down to that fence-

row to Mr. Broom. Broom did never go south of this fence-row. I acted for Mrs. Byrd, and I and Mr. Holtzclaw agreed on that line."

In a controversy between two persons respecting a boundary, it is competent to show that a person under whom the defendant claims, and the then proprietor of the adjoining tract of land, had an understanding and agreement as to the dividing line in question, and that the coterminous proprietors acted upon this understanding, and treated it as settling the question of boundary. *Wood* v. *Crawford*, 75 *Ga.* 734; *Cleveland* v. *Treadwell*, 68 *Ga.* 836; *Miller* v. *McGlaun*, 63 *Ga.* 436. And where each of two coterminous proprietors recognizes the ownership of the other, and that the tract of each is bounded by that of the other, the ascertainment of the true line between them fixes the extent of their respective tracts. *Phillips* v. *O'Neal*, 87 *Ga.* 727 (13 S. E. 819).

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur.*