1. Exceptions to the allowance of testimony which show that no grounds of objection were urged at the trial, are insufficient to raise any question for decision. Grounds or reasons why such evidence should have been repelled, set forth and urged for the first time in special grounds of a motion for new trial, will not be considered.
2. Under the evidence as to the existence of a partnership between the petitioner and the defendant, and their agreement to purchase the land involved jointly, and evidence that the petitioner paid half of the purchase-money and trusted the defendant to close the deal and obtain a conveyance naming them both as grantees, the defendant could not obtain an interest in the land antagonistic to that of the petitioner; and where the defendant procured a deed having that effect, equity will annul the conveyance and decree title in the petitioner to his share. The petitioner was justified in failing to read the deed which he signed or to examine the records, and in relying upon the defendant, because *Page 617 
of the confidential relationship existing between them; and where suit was brought promptly upon learning of the defendant's breach of faith, the petitioner is not estopped by laches, although fourteen years had passed since the deed attacked was executed.
 No. 14848. MAY 4, 1944.
G. C. Rogers brought suit against M. E. Crosby, and alleged that on June 23, 1926, he and the defendant jointly purchased a described 299-acre tract of land in Long County, Georgia, from C. M. Tyson. Previously they had been dealing jointly in business matters, and the petitioner had implicit confidence in the defendant and trusted him to have the deed from Tyson made to them jointly, which he believed in good faith had been done until within the last few days, when he discovered to his surprise that the land had been deeded to the defendant individually, and the petitioner was not mentioned as one of the grantees therein. He paid half of the purchase-price of the land, as agreed with the defendant, and it was agreed that the deed should be made to them jointly. Until very recently they have exercised joint control over the land, both concurring in leasing the timber for turpentine purposes: and the petitioner instructed the defendant to sign two leases on the tract for turpentine purposes, believing that the leases were executed in behalf of both himself and the defendant. He received his share of the proceeds from the said leases. He recently learned that the defendant claimed all of said land and is now threatening to sell the same. When he first learned that the defendant was claiming to own the land, he searched the public records of Long County and found that the defendant had caused the deed from C. M. Tyson, conveying said land, to be made to the defendant alone, the deed being recorded in deed book 4, page 295. If he had known before this time that the defendant claimed all of said land, he would have moved against the defendant to establish his rights in the premises. He has acted promptly after ascertaining said claim of the defendant. He has learned of nothing to put him on notice or inquiry that the defendant was claiming to be the sole owner of the land. The defendant is wilfully, wrongfully, unjustifiably, and fraudulently undertaking to deprive the petitioner of his half interest in said tract of land. The prayers were for process, service, a lis pendens record, injunction, a decree *Page 618 
of title to a half undivided interest in the land, and for general relief.
The defendant answered, denying the material allegations, and alleging that he purchased all of the land sued for and paid the full purchase-price, and that the petitioner paid no part thereof and had no interest therein. He did nothing to cause the petitioner to delay ascertaining that the land was deeded to the defendant. The only instance of the petitioner and the defendant owning property jointly was their purchase after June, 1926, of a tract of land in Jeff Davis County. The petitioner is barred from any relief sought because of laches. The deed was duly recorded on July 3, 1926, and thus the petitioner had constructive notice thereof. On February 11, 1927, the petitioner and the defendant jointly executed a deed to secure debt in favor of Citizens Bank of Folkston, which was recorded on April 6, 1927, and in which the land here involved is described by referring to the deed to the defendant, giving its date, the name of the grantor, Charles M. Tyson, and the name of the grantee, M. E. Crosby, with the office, book, and page where the same is recorded. Though the petitioner knew that the land sued for belonged to the defendant. he wilfully entered thereon within four years and unlawfully cut and removed specified timber of the value of $740.94, for which the defendant sought judgment.
On the trial the petitioner testified in his own behalf: The defendant told him that he had found some land a Mr. Wilkes had in Long County for sale. Wilkes was a real-estate man. There were about 300 acres in the tract. At the request of the defendant the petitioner went with him and looked at the tract of land sued for. Wilkes went with them and priced it to them at $1500. It was 299 acres and the same land described in the petition. The witness did not know at that time who owned the land. Wilkes was handling it. They decided to buy it. The witness had been buying timber for the company, and was familiar with the value of timber lands, but the defendant was not. They agreed that afternoon to pay the price asked for the land, and Wilkes was so informed, and advised that the defendant would see him the next week, pay the $1500 purchase-price, and close the deal. They went back to Brunswick. The petitioner had $400 stock in the company they worked for, and one $500 Liberty bond. He made *Page 619 
these available to the defendant, to be used as collateral to borrow money to pay for the land. He put up possibly $200 cash, and the defendant probably $375. They both signed a note to the bank for the balance of the purchase-money. The defendant took the money and with it paid for the land. The defendant informed the petitioner, when the latter came in on Friday or Saturday, that he had bought the land. The petitioner did not ask to see the deed, and never did see it. A few days thereafter, he and the defendant drove their wives over and looked at the land and discussed it in their presence as "our land," and what they were going to do with it. Beyond doubt the defendant knew then that the petitioner claimed an interest in the land. Soon, Mr. Ruben Davis wanted to build a sheep pen on the land, and the defendant asked the petitioner what he thought about it and was told that it was all right. The next thing done about the land was that the defendant gave a Mr. Blount authority to cut some piling, and told the petitioner after Blount had started cutting, and the money for the timber was applied to the loan representing the purchase-money. Next, Mr. Atkinson wanted to cut some lightwood, and the defendant asked the petitioner about it, and the petitioner said it was all right, and Atkinson cut about 400 cords, and the defendant collected for it. The next thing done with the land was that the defendant, about 1936, telephoned the petitioner saying he had a prospect to sell a turpentine lease on the land, and asked the petitioner to spare a few days and check it and see how much it would cup. The defendant said that his prospective customer was a Mr. Heymans. The petitioner agreed to check it, and did so, and after conferring with a number of possible lessees on the price, the petitioner finally told Heymans that they would accept his price of 14 cents a cup, and directed him to go to the defendant who would make the lease. The petitioner told the defendant how much it would cup, and that Heymans was to pay down so much when he started cupping, and the balance when he finished cupping, the down payment to be $14 per thousand. He told the defendant he thought the lease would pay all they owed on the land and what they owed for the Jeff Davis County land and leave them $175 each, and drew a draft on the defendant for $175, which the defendant turned down, and wrote him a letter requesting that he go to Brunswick. When he went to Brunswick, the defendant said *Page 620 
he owed a little more than he had figured, that he did not have that much coming, and they checked up and found that he was due $100, and the defendant gave him a check for $100. When Heymans' four-year lease expired, he got in touch with the defendant and suggested that they renew it for another year for about $200, and they renewed it. When this renewal expired, he went to the defendant's home and told him they could get $100 for another year's renewal, and it was again renewed. About two years before the trial, the petitioner cut 26 pilings and 269 ties on the land, and got a letter from the defendant. Thereupon, the petitioner employed a lawyer who examined the records and found that the defendant had the land in his name, and that was the first time the petitioner knew about it. He had never had any information from any source before getting the defendant's letter that the defendant claimed the land. When the defendant gave him his half of the money for the turpentine leases, he made no contention that the petitioner was not entitled to it. The petitioner paid fifty per cent of the purchase-price of the land here involved. He acknowledged having signed the security deed to the Folkston Bank; but said that he did not read it, and that he never had it in his possession except to sign it. He testified that the maker of the deed to the defendant, as well as the two witnesses to the deed, were dead at the time of the trial.
Mr. Heymans, who leased the turpentine privileges, testified: "I talked with Mr. Crosby first about it, and talked to Mr. Rogers before I rented it. I talked to Mr. Crosby and made him a price on it, and he told me that he had a partner, that he did not know anything about the timber himself, but that he had a partner that was familiar with the turpentine business, and he would get him to go look at it." The petitioner spotted the timber, and told Heymans that he had an interest in it, that he and Crosby owned it together. Heymans never talked to the defendant about renewing the lease, but talked only to the petitioner, and the petitioner extended it both times. The defendant never complained about his working the timber the two extra years. The defendant signed the renewals.
J. W. Miller testified for the petitioner that he had a conversation with the defendant about 1927 regarding the land sued for. The witness was considering buying it, and the defendant said that *Page 621 
before going further he would have to consult his partner. He said his partner was G. C. Rogers. "The way Mr. Crosby explained it to me, each of them owned a half interest in the property."
The defendant testified in his own behalf that he bought the land and paid for it, and that the petitioner paid no part of the purchase-money, had no interest in the land, and they had never had any agreement by which the petitioner was to own any interest therein. He denied giving the petitioner any part of the money received for the timber and turpentine leases. He testified that the petitioner cut and removed timber of the value of $740.94 without authority, and should be required to pay him this amount; that when he discovered that the petitioner had cut the timber, he demanded payment from him at once, and this was the only time the petitioner had indicated that he claimed any rights in the land.
The jury returned a verdict for the petitioner. The defendant excepts to the judgment overruling his motion for new trial.
1. There are three special grounds of the motion for new trial, each of which excepts to the allowance of specified testimony of named witnesses for the defendant in error "over the objection of counsel for movant." But none show what, if any, grounds of objection were made and urged at the trial. In thus failing to show any ground of objection urged at the trial, these special grounds are insufficient to raise any question for decision. Jenkins v. Jenkins, 150 Ga. 77 (102 S.E. 425);Shirley v. Byrd, 162 Ga. 598 (134 S.E. 316); Trussell v.State, 181 Ga. 424, 425 (2) (182 S.E. 514); Smith v.State, 192 Ga. 713 (2) (16 S.E.2d 543). Each of these grounds sets forth various arguments why the evidence therein complained of should have been excluded; but it is settled law that grounds of objection to evidence must be urged upon the trial, and can not be urged for the first time in a motion for new trial, and that exceptions to the admission of evidence will be determined by the grounds of objection urged upon the trial.Walthour v. State, 191 Ga. 613 (1 a) (13 S.E.2d 659);Holley v. State, 191 Ga. 804 (6) (14 S.E.2d 103);Mickle v. Moore, 193 Ga. 150, 153 (17 S.E.2d 728), and cit. The special grounds are without merit. *Page 622 
2. The petitioner testified in his own behalf that he had an agreement with the defendant whereby they were to buy the land sued for jointly, that he delivered his half of the purchase-money to the defendant, and trusted him to pay the purchase-money and obtain a deed conveying the land to them jointly. He further testified that he had received half of the proceeds from the sale an lease of timber on the land, and proved by two other witnesses that the defendant had stated that the petitioner owned an undivided half interest in the land. But the defendant, in violation of the agreement, procured a deed of conveyance of the land in which the defendant alone was named as grantee. This evidence was sufficient to show an implied trust, and to authorize the verdict in favor of the petitioner for the recovery of an undivided half interest in the land. Code, § 108-106; Cottle v. Harrold, 72 Ga. 830; Purvis v.Johnson, 163 Ga. 698 (137 S.E. 50); Chapman v. Faughnan,183 Ga. 114 (187 S.E. 634); First National Bank c. Co. v.Roberts, 187 Ga. 472 (1 S.E.2d 12); Guffin v. Kelly,191 Ga. 880 (14 S.E.2d 50).
But counsel for the movant strongly contend that notwithstanding this evidence, the verdict is unauthorized. It is contended that the physical facts admitted by the petitioner contradicted and in legal effect destroyed his testimony to the effect that he had no knowledge of the fact that he was not named as a joint grantee in the deed until just immediately before the present suit was filed. It is insisted that the deed dated June 24, 1926, was recorded on July 3, 1926, and constituted constructive notice to the petitioner. It is insisted further that since the petitioner admits that shortly thereafter he, jointly with the defendant, signed a security deed which conveyed the land here involved, and in which the land was identified by reference to the deed from Tyson to the defendant and by pointing out the book and page number where that deed was recorded, the petitioner is presumed to have read the deed and to have known its contents, and is estopped to deny such knowledge. This argument, if made in a case to which it would apply, might be potent, but here it is met by the fact that the parties, being partners, stood in a confidential relationship to each other. Code, § 37-707. Hence, because of this relationship, the petitioner was justified in relying upon his partner, the defendant, and because of this reliance, he was justified in failing to read and know the *Page 623 
contents of the deed. Where such relationship existed, the defendant became interested with the petitioner in the property, and "he is prohibited from acquiring rights in that subject or property antagonistic to" the petitioner. Code, § 37-708. In such circumstances, the statute of limitations would begin to run against the petitioner only when he acquired knowledge of the fraud. See Hadaway v. Hadaway, 192 Ga. 265
(14 S.E.2d 874). The verdict is supported by the evidence, and the court did not err in overruling the motion for new trial.
Judgment affirmed. All the Justices concur.