A94A2549. THOMPSON et al. v. KOHL.
(453 SE2d 485)

BEASLEY, Presiding Judge.

J. Scott Kohl left employment with an automobile dealership after receiving an offer of employment with TermNet, Inc., a Texas corporation solely owned by Charles D. Thompson, Sr. The offer was contained in a letter from Thompson, Sr. to Kohl, under which Kohl was to be paid a certain base salary plus commissions in various stated amounts. Kohl agreed to the offer of employment by signing the letter in February 1990. He began his employment in the Merchant Services Division of TermNet the following month.

Kohl was to be working with the owner's son, Charles D. Thompson, Jr., who was a friend of Kohl's and was instrumental in his becoming employed with TermNet. In January 1991, TermNet Merchant Services, Inc. (TMS), was activated as a Georgia corporation. Thompson, Sr. transferred his interest in TMS to Thompson, Jr., who became CEO and sole shareholder. TMS then became successor in interest to the business of the Merchant Services Division of TermNet. In March 1991, Thompson, Jr. terminated Kohl's employment with TMS.

Kohl sued Thompson, Jr., TMS, and TermNet for compensation due under the letter agreement and for ten percent of the corporate stock in TMS, which he alleged was verbally promised to him by Thompson, Jr.

Kohl testified by affidavit that prior to leaving employment with the automobile dealership and signing the February 1990 letter of agreement, he reached a separate agreement with Thompson, Jr., under which they mutually agreed that they would work together to increase the profitability and cash flow of the Merchant Services Division in order to allow Thompson, Jr., to purchase this business from his father; that if and when Thompson, Jr. purchased the business

and formed a new corporation Kohl would manage its operations; and that Thompson, Jr. would give Kohl a minimum of ten percent ownership in the new corporation when he purchased the business and transferred it to a new corporation. In Kohl's deposition, he testified that he was to get the ten percent stock ownership in the new corporation whenever the transfer took place but that he would not be entitled to it unless he was still employed with the new company.

The trial court denied Thompson, Jr.'s and TMS' motion for summary judgment but dismissed TermNet as a party. We granted Thompson, Jr.'s and TMS' application for interlocutory appeal.

1. Thompson, Jr. and TMS argue that Kohl's claim for ten percent of the corporate stock of TMS, being based on a verbal promise, is legally barred by OCGA § 11-8-319.

OCGA § 11-8-319 is the Statute of Frauds contained in Article 8 of the UCC on Investment Securities. OCGA § 11-8-101 et seq. Under it, a contract for the sale of securities is not enforceable unless: (a) there is some signed writing sufficient to indicate that a contract has been made for the sale of a stated quantity of described securities at a defined or stated price; (b) delivery of a certificated security or transfer instruction has been accepted, or transfer of an uncertificated security has been registered and the transferee has failed to object, or payment has been made; (c) within a reasonable time a writing in confirmation of the sale or purchase has been received by the party against whom enforcement is sought and he has failed to object; or (d) there is an admission in judicio by such party. See *Murrey v. Specialty Underwriters*, 233 Ga. 804, 808 (213 SE2d 668) (1975).

Kohl argues that OCGA § 11-8-319 is inapplicable because shares of a closely-held corporation do not constitute investment securities under the definitional section of Article 8, which is OCGA § 11-8-102.

Under OCGA § 11-8-102 (1) (c), a "security" is either a certificated or an uncertificated security. A "certificated security" is "[o]f a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium of investment." OCGA § 11-8-102 (1) (a) (ii). An "uncertificated security" is "[o]f a type commonly dealt in on securities exchanges or markets." OCGA § 11-8-102 (1) (b) (ii).

Georgia cases applying OCGA § 11-8-319 have not considered the question of whether the shares of stock in a corporation are "securities" within the meaning of OCGA § 11-8-102. See *Patterson v. Professional Resources*, 242 Ga. 459, 460 (3) (249 SE2d 248) (1978); *Murrey v. Specialty Underwriters*, supra; *Godwin v. Westberry*, 231 Ga. 492 (202 SE2d 402) (1973); *Turner v. MCI Telecommunications Corp.*, 203 Ga. App. 71 (416 SE2d 370) (1992); *Demer v. Capital City Cable*, 190 Ga. App. 40, 44 (4) (378 SE2d 162) (1989).

Courts in other states have held that their counterparts to UCC

§ 8-319 did not apply to sales of stock in closely-held corporations, on grounds that such stock was not dealt in by securities exchanges or commonly recognized as a medium of investment and therefore was not an investment security under UCC § 8-102. *Blasingame v. American Materials*, 654 SW2d 659, 664 (2) (Tenn. 1983) and cits.

The official comment to UCC § 8-102 currently states that interests such as the stock of closely-held corporations, although they are not actually traded upon securities exchanges, are intended to be included within the definitions of both certificated and uncertificated securities by the inclusions of interests "of a type" commonly traded in those markets. We hold that the stock of a closely-held corporation such as TMS is a "security" within the meaning of OCGA § 11-8-102.

In *Zamore v. Whitten*, 395 A2d 435, 441 (12) (Me. 1978), the court assumed without deciding that stock certificates evidencing ownership of stock in a closely-held corporation are "goods" within the meaning of UCC Article 2, although not investment securities under Article 8. This would render the Article 2 Statute of Frauds, UCC § 2-201, applicable. This approach is supported by the official comment to UCC § 2-105, which states that although investment securities are expressly excluded from coverage of Article 2, it is not intended by this exclusion to prevent the application of a particular section of Article 2 by analogy to securities, when the reason for that section makes such application sensible and the situation involved is not covered by Article 8. *First Nat. Bank of Chicago v. Jefferson Mtg. Co.*, 576 F2d 479, 489 (3) (3rd Cir. 1978); *Silverman v. Alcoa Plaza Assoc.*, 323 NYS2d 39, 43 (1) (App. Div. 1971).

2. Alternatively, Kohl argues that OCGA § 11-8-319 is not applicable to an oral contract under which an employer has agreed to transfer corporate stock to an employee in consideration for services rendered, in that this is not a contract for the "sale" of securities.

Article 8 of the UCC does not define "sale." Article 2 defines "sale" as "the passing of title from the seller to the buyer for a price." OCGA § 11-2-106 (1). Webster's Third New International Dictionary defines "sale" as "a contract transferring the absolute or general ownership of property from one person or corporate body to another for a price (as a sum of money or any other consideration)."

Kohl's argument is supported by cases decided in other states. *Baldassarre v. Singer*, 282 A2d 262, 264 (2) (Pa. 1971), and *Bowers Steel v. De Brooke*, 557 SW2d 369, 374 (13) (Tex. Civ. App. 1977), relied upon by Kohl, hold that there is no "price" for stock transferred pursuant to an employment contract in which the only consideration is the employment itself, and, therefore, such a contract is not one for the "sale" of securities under UCC § 8-319. In response, Thompson, Jr. and TMS cite *Goldfinger v. Brown*, 564 NYS2d 459 (App. Div. 1991), and *Beta Drilling v. Durkee*, 821 SW2d 739 (Tex.

Civ. App. 1992). *Goldfinger* holds that where an oral employment contract requires the employee to pay a sum of money for corporate stock, there is a "price" and therefore a "sale" under UCC § 8-319. *Beta Drilling* is in accord.

In *Baldassarre* and *Bowers*, the courts also reasoned that even if UCC § 8-319 was applicable to such an oral employment contract, then the plaintiffs in those cases, by leaving their previous employment and working for the corporation, made "payment" for the stock and thus were entitled to enforce their oral contract under the terms of § 8-319 (b).

Although the question is debatable, we hold that an oral agreement by an employer to transfer corporate stock to an employee for a non-monetary consideration is not a "sale" within the meaning of UCC § 8-319. Even if we were to hold that it is a sale, Kohl has submitted evidence that he rendered the services that constituted the consideration for the transfer, thereby entitling him to seek enforcement of the alleged oral agreement under the exception contained in subsection (b) of § 8-319. See *Baldassarre*, supra; *Bowers*, supra; compare *Baxley Veneer &c. Co. v. Maddox*, 261 Ga. 309, 310 (1) (404 SE2d 554) (1991); *Sams v. Duncan & Copeland, Inc.*, 153 Ga. App. 765 (1) (266 SE2d 546) (1980).

3. In reliance upon such cases as *Alston v. Brown Transport Corp.*, 182 Ga. App. 632, 633 (1) (356 SE2d 517) (1987); *Taylor v. Amisub, Inc.*, 186 Ga. App. 834, 835 (1) (368 SE2d 791) (1988), and *Sams*, supra, Thompson, Jr. and TMS argue that Thompson, Jr.'s alleged oral promise to give corporate stock to Kohl is legally unenforceable, in that it constituted a verbal executory promise relating to an employment terminable at will.

This case, unlike such cases as *Alston* and *Taylor*, involves a promise which, according to Kohl's testimony, required fulfillment prior to termination of his employment. See *Alston*, supra at 633 (2).

The decision in *Sams* was based on the holding that an oral employment agreement for an indefinite duration falls within the purview of the Statute of Frauds. This holding was disapproved in *Wood v. Dan P. Holl & Co.*, 169 Ga. App. 839, 840 (2) (315 SE2d 51) (1984).

4. In reliance upon such cases as *Marshall v. W. E. Marshall Co.*, 189 Ga. App. 510, 512 (3) (376 SE2d 393) (1988), Thompson, Jr. and TMS argue that the alleged verbal promise is too vague and uncertain to be enforceable.

The agreement in *Marshall* was simply an oral contract to sell corporate shares. In contrast, the agreement in the present case is to transfer a minimum of ten percent of the corporate shares to Kohl, and Kohl seeks the minimum ten percent. That is a definite amount. Compare *Demer*, supra, 190 Ga. App. at 42 (2). This alleged agreement is not too indefinite to be enforced in this manner.

*Judgment affirmed. Andrews and Johnson, JJ., concur.*

DECIDED DECEMBER 19, 1994 —
RECONSIDERATION DENIED JANUARY 25, 1995 —

*Culbreth & Sharony, Abraham A. Sharony, Freed & Freed, Gary S. Freed,* for appellants.
*Smith & Fleming, Daniel J. Weber,* for appellee.