## A00A2580. ROSE v. CAIN.
### (544 SE2d 453)

MILLER, Judge.

Plaintiff Ralph D. Cain filed this action to set aside a security deed to residential real estate purportedly signed by him in favor of defendant Terry R. Rose as grantee to secure a supposed $85,000 debt. Rose counterclaimed, alleging an oral agreement that Cain would convey the property described in the security deed at issue. At the close of all the evidence, the trial court directed a verdict against

[19] Id. at 627.
[20] 242 Ga. App. 121 (527 SE2d 614) (2000).
[21] Id. at 123 (1) (c).
[22] 237 Ga. App. 865, 867 (1) (c) (517 SE2d 102) (1999).

this counterclaim and denied Rose's motion for a directed verdict on Cain's claim of fraud in the factum.[1] In a special interrogatory, the jury found the security deed was not valid and enforceable, and judgment was entered accordingly. On appeal, Rose contends the trial court erred in denying his motion for directed verdict as to fraud and in granting Cain's motion for directed verdict as to the alleged oral contract to convey real property. He further enumerates as error the court's jury instructions on accident, mistake, and on the principles of a confidential relationship. We affirm.

1. In Georgia, a directed verdict or judgment notwithstanding the verdict is authorized

> only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. The denial of a motion for j.n.o.v. will be affirmed, if, after viewing the evidence in the light most favorable to the party securing the verdict, there is any evidence supporting the jury's verdict. And the direction of a verdict must be reversed if there is any evidence supporting a contrary verdict.[2]

Viewed in the light most favorable to Cain, who obtained the jury's verdict that the security deed is unenforceable, the evidence showed the following:

In 1979, defendant Rose purchased three tracts of land, including the property at issue (Tract Two) upon which he built a residence. He subsequently filed for bankruptcy, and under a reaffirmation agreement with his lender, Rose agreed to catch up on delinquent mortgage payments by making double payments, amounting to approximately $1,400 per month. Meanwhile, Rose's loan was sold to People's Bank, and the assignee demanded payments of up to $2,100 to $2,500 per month. This put unbearable pressure on Rose, not knowing month to month whether he would be able to meet his obligation. In 1995, Cain and Rose became partners in a business venture to market pet bedding permeated with flea powder. Cain invested $28,000 and created a joint checking account from which Rose could sign checks. In order to avoid having his partner lose his home (where their product would be manufactured), Cain agreed to

---

[1] This sort of fraud procures a party's signature to an instrument without his knowledge of its true nature or contents. *Bellamy v. Resolution Trust Corp.*, 266 Ga. 630, 631 (1) (469 SE2d 182) (1996).

[2] (Punctuation and footnotes omitted.) *Camp v. Eichelkraut*, 246 Ga. App. 275, 278 (1) (539 SE2d 588) (2000).

pay off Rose's loan on Tract Two by purchasing that lot from Rose for $90,000.

Rose conveyed the property to Cain by warranty deed. The sale was financed with a $72,000 loan from Great Western Mortgage Company, to whom Cain conveyed the property by security deed. Rose gave Cain a signed purchase agreement reciting that Rose had received $5,000 earnest money from Cain, which Cain testified he gave Rose in cash. At closing, Cain gave Rose another $15,300. Rose admitted he lied when he affirmed in writing, under penalty of perjury, that there was no under-the-table agreement about the loan proceeds. He also admitted that no money was ever transferred to create the $85,000 debt supposedly secured by the deed at issue. A real estate appraiser gave expert opinion testimony that the house and land were valued at approximately $90,000 and most certainly would not appraise for the $150,000 to $200,000 that Rose thought the property was worth.

Cain denied signing the security deed at issue but acknowledged that the signature resembles his. Rose asked Cain to sign some documents purporting to incorporate the business venture, and Cain's signature could have been fraudulently obtained then. When Cain discovered perceived misuse by Rose of the $28,000 invested, he told Rose to vacate the house. Only then did Rose attempt to foreclose on the $85,000 security deed.

Rose alluded to his deception to others. Marcus Carnes operates a bar and grill. One day in October 1995, after having a few drinks, Rose told Carnes, " 'I ain't losing my house to nobody [because] I just figured out a way to beat them out of $30,000 or more.' " In the spring of 1996, on another occasion when Rose was apparently intoxicated, he said in the presence of Hilda Oller that "he wasn't going to lose his house because he had some paperwork that Ralph [Cain] didn't know anything about [and] that he [Rose] was coming into $85,000.00 pretty soon."

2. Cain's evidence showed that the parties were partners or joint venturers in the development of Rose's idea for a pet bed treated with flea insecticide, and that Rose tricked him into signing the $85,000 security deed by misrepresenting it as a document related to their joint venture.

As partners, the parties stood in a confidential relationship to each other with respect to their business.[3] Among persons sustaining a relationship of trust and confidence, silence when one should speak or a failure to disclose what ought to be disclosed constitutes fraud in

---

[3] *Crosby v. Rogers*, 197 Ga. 616, 622 (2) (30 SE2d 248) (1944).

law just as do affirmative false representations.[4] Proof of this confidential relationship authorized the trial court's charge on confidential relationships taken from OCGA § 23-2-58.[5] Such a relationship would authorize the jury to conclude that Cain was justified in failing to read and know the contents of the security deed Rose presented to him for his signature under the ruse that the document pertained to their joint venture.[6]

Furthermore, proof that Rose attempted to foreclose on the security deed obtained by deceit — which deed is admittedly unsupported by valuable consideration after he had already conveyed the property to Cain by warranty deed — is sufficient proof of actionable fraud in the factum to support the jury's verdict in this case. The trial court correctly denied Rose's motion for directed verdict on Cain's claim of fraud. The first and fifth enumerations are without merit.

3. The second enumeration contends the trial court erred in directing the verdict against Rose's counterclaim to enforce an oral agreement to reconvey the property. The trial court concluded the alleged agreement was not enforceable under the Statute of Frauds.[7] On appeal, Rose argues that part performance removes his agreement from the Statute of Frauds. We disagree.

The provisions of the Statute of Frauds do not extend to cases "[w]here there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance."[8]

> Full payment alone accepted by the vendor, or partial payment accompanied [by] possession, or possession alone with valuable improvements, if clearly proved in each case to have been done with reference to the parol contract, shall be sufficient part performance to justify a decree [of specific performance].[9]

But the part performance shown must be consistent with the presence of a contract and inconsistent with the lack of a contract.[10]

---

[4] *Tigner v. Shearson-Lehman Hutton, Inc.*, 201 Ga. App. 713, 715 (411 SE2d 800) (1991).

[5] See *Smith v. Lott*, 246 Ga. 366, 367 (271 SE2d 463) (1980) (where there is any evidence, however slight, upon a particular point, it is not error for the court to charge the law in relation to that issue).

[6] *Crosby v. Rogers*, supra, 197 Ga. at 622-623 (2).

[7] OCGA § 13-5-30 (4) requires any contract for the sale of lands, or any interest in, or concerning lands, to be in writing and signed by the party to be charged.

[8] OCGA § 13-5-31 (3).

[9] OCGA § 23-2-131 (b).

[10] *Hudson v. Venture Indus.*, 243 Ga. 116, 118 (252 SE2d 606) (1979). Accord *R. T. Patterson Funeral Home v. Head*, 215 Ga. App. 578, 583 (1) (b) (451 SE2d 812) (1994) (physical precedent only).

Here, the proof of part performance is Rose's continued possession after the conveyance plus his making monthly payments to Cain of approximately $450. This is certainly consistent with the existence of an oral agreement to convey the property back to Rose after the new loan was paid off, but it is not at all inconsistent with the lack of such an agreement, after Rose conveyed the property by warranty deed. Monthly payments approximating rent do not, in our view, establish part performance of the alleged oral agreement to (re)convey the property to Rose.

Furthermore, Rose is disabled from seeking equitable relief under OCGA § 23-1-10[11] because he has unclean hands directly related to the subject matter of the transaction concerning which relief is sought.

> The unclean-hands maxim which bars a complainant in equity from obtaining relief has reference to an iniquity which infects the cause of action so that to entertain it would be violative of conscience. It must relate directly to the transaction concerning which complaint is made.[12]

"These rules stem from the just and salutary principle that one will not be permitted to profit by his own wrong, and apply where a party is seeking the aid of equity in the enforcement of executory contracts. . . ."[13]

Since Rose admitted the security deed he attempted to foreclose upon was unsupported by any valuable consideration while the sale to Cain has undisputed economic substance, he is barred from seeking equitable relief to obtain title to the real property allegedly securing the nonexistent debt. It scarcely amounts to a fraud against Rose to refuse to enforce the oral agreement. The trial court correctly concluded that, viewing the evidence in the light most favorable to Rose, the alleged oral agreement to transfer land was unenforceable under the Statute of Frauds.

4. The third and fourth enumerations complain of the trial court's jury instructions on accident[14] and mistake,[15] respectively.

"If the form of the conveyance is, by accident or mistake, contrary to the intention of the parties in their contract, equity shall

---

[11] "He who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action."

[12] (Citations omitted.) *Atlanta Assn. of Fire Ins. Agents v. McDonald,* 181 Ga. 105, hn. 2 (181 SE 822) (1935).

[13] *Fuller v. Fuller,* 211 Ga. 201, 202 (84 SE2d 665) (1954).

[14] OCGA § 23-2-20.

[15] OCGA §§ 23-2-21; 23-2-24.

interfere to make it conform thereto."[16] "Equity has jurisdiction to reform written instruments where there has been a mistake on the part of one of the parties, accompanied by fraud on the part of the other party, just as in cases where there is a mutual mistake."[17]

Cain testified that, as he did not knowingly sign the security deed at issue, its execution and Rose's attempted foreclosure thereunder were fraudulent. This was a sufficient evidentiary foundation to authorize the trial court's instructions on equitable relief from written instruments based on accident and mistake.

*Judgment affirmed. Pope, P. J., and Mikell, J., concur.*

DECIDED JANUARY 5, 2001.

*William S. Hardman*, for appellant.
*Turner & Willis, Brett D. Turner*, for appellee.

---

[16] OCGA § 23-2-25.

[17] (Citations omitted.) *Lynch Enterprise Finance Corp. v. Realty Constr. Co.*, 176 Ga. 700 (2) (168 SE 782) (1933). Accord OCGA § 23-2-31: Equity "may rescind and cancel upon the ground of mistake of fact material to the contract of one party only."