A05A1519. FAY v. CUSTOM ONE HOMES, LLC et al.

(622 SE2d 870)

RUFFIN, Chief Judge.

Gary W. "Skip" Fay sued his former employer, Custom One Homes, LLC ("Custom One"), and Stephen Tucker for breach of contract, quantum meruit, breach of fiduciary duty, and attorney fees. The defendants moved for summary judgment on all claims, and the trial court granted their motion. For reasons that follow, we affirm in part and reverse in part.

"Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law."[1] We review the trial court's grant of summary judgment de novo, construing the evidence and all reasonable inferences in favor of the nonmoving party.[2]

Viewed in this manner, the record shows that, at the relevant time, Tucker was the owner and CEO of Custom One, which initially constructed single family residences. In 1996, Tucker hired Fay to serve as the company's director of operations. The following year, Fay became company president.

Sometime later, Custom One was evicted from its offices, and management decided to construct an office building to house the company. Tucker acquired land for the building and titled it in a newly formed company, Custom One Leasing, LLC ("Custom Leasing"). Custom One then acted as general contractor for the building's construction, with Fay taking a leadership role in that effort. According to Tucker, Fay was responsible for ensuring that the building was "constructed on budget and within the time constraints that . . . had

---

[1] *Marshall v. King & Morgenstern,* 272 Ga. App. 515, 516 (613 SE2d 7) (2005).
[2] See id.

[been] outlined." Fay testified by affidavit that he considered his work in overseeing construction of the office building to be "outside the scope of [his] duties as President of Custom One." He also testified, however, that he took part in the construction project as part of his employment. In February 1999, Custom One moved into the completed building, which is still titled to Custom Leasing.

At some point, Fay and Tucker began to discuss vesting Fay with an ownership interest in Custom Leasing. According to Fay, Tucker told him that, to further compensate him for his work with the company and "thank[ ] [him] for a job well done," Tucker would vest in Fay a 30 percent interest in the office building, plus the building's furniture. In December 1997, Tucker wrote Fay a memorandum stating:

> As I had mentioned to you verbally, I will vest you with 30% ownership of the new office building over a three year period counting for time already serve[d] to your credit. It will be easier to vest than to sell. However, it is my intention that you should be able to receive a substantial [sic] of your vested interest in the building fairly easily after working five years were you to terminate employment. The program will be fair.

Five months later, Tucker gave Fay a suggested "outline for the vesting, ownership and exit options for the new office building." In the outline, Tucker, who at that time owned 100 percent of Custom Leasing, stated that he "desire[d] to share his ownership interest in Custom One Homes Leasing." Tucker further indicated that, under the outlined proposal, Fay would receive a 30 percent ownership share. The outline set forth a vesting schedule, as well as a repurchase program if Fay were no longer employed by Custom One.

In January 2002, Custom One terminated Fay's employment. In Fay's termination letter, Tucker referenced a written document relating to Custom Leasing's ownership. As stated by Tucker:

> [This] document was my intent to vest you with up to 30% ownership in Custom One Leasing, L.L.C. Even though I do not have a signed copy of this document in my personnel files, it was my intention to vest you with ownership in this company over the time period outlined in the L.L.C. Incorporation Agreement. You would have been eligible for 20% ownership under the terms contemplated in the document agreement, as of today's date.

After Fay's termination, Tucker's counsel drafted an agreement for the repurchase of Fay's interest in Custom Leasing. The draft

agreement specifically stated that Fay "is the owner of a twenty percent (20%) membership interest in" Custom Leasing, and it valued that interest at $37,871.02. Fay apparently disputed the valuation and did not sign the agreement. The parties conducted further negotiations regarding the value of Fay's interest, but those negotiations did not resolve the issue, and Fay filed suit for breach of the oral agreement to vest in him 30 percent of Custom Leasing. He also alleged claims for quantum meruit, breach of fiduciary duty, and attorney fees.

The defendants moved for summary judgment, arguing, among other things, that Fay's contract claim is barred by the Statute of Frauds, which requires that contracts for the sale of lands be in writing.[3] The trial court agreed, finding summary judgment appropriate on the contract claim, as well as Fay's other claims. Fay now appeals the summary judgment ruling.

1. *Breach of Contract.* (a) We first address the defendants' claim that the alleged oral agreement is too indefinite to enforce. "To constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."[4] In analyzing whether an oral contract is sufficiently definite to be enforced, courts look to "whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon."[5] Although the law does not favor destruction of contracts on grounds of uncertainty, "[i]ndefiniteness in subject matter so extreme as not to present anything upon which the contract may operate in a definite manner renders the contract void."[6]

Fay testified that Tucker agreed to vest him with a 30 percent ownership in the office building and its furniture, less the value of an outstanding first mortgage. The vesting was to take place over a three-year period beginning from his initial employment date. According to Fay, he understood that, if he left Custom One, his ownership interest would be repurchased in annual twenty percent installments over a five-year period. As described by Fay:

> I would have an appraisal [of the building] done. [Tucker] would have an appraisal done. We would average the two, including the furniture, subtract the Riverside SBA loan that was outstanding, and 30 percent of that number would

---

[3] See OCGA § 13-5-30 (4).

[4] OCGA § 13-3-1.

[5] (Punctuation omitted.) *Kueffer Crane &c. v. Passarella*, 247 Ga. App. 327, 330 (3) (543 SE2d 113) (2000).

[6] (Punctuation omitted.) Id.

be my share that would be paid out over a five-year period at 20 percent a year beginning the first year after termination.

We find the alleged oral agreement described by Fay sufficiently definite to be enforced.[7] Fay testified as to the amount of the interest to be transferred under the agreement, the schedule for vesting, and the defendants' obligation to pay Fay for his interest in the event his employment terminated.[8] Furthermore, the record shows that Tucker, in fact, transferred a 20 percent interest in Custom Leasing to Fay pursuant to the agreement.[9] Although Tucker now denies that he ever entered into a final agreement with Fay and disputes the terms of the alleged agreement, "[w]here there is a conflict in the evidence as to the existence of an oral contract or as to its terms, the matter must be submitted to a jury for resolution."[10]

(b) The defendants also argue — and the trial court agreed — that the Statute of Frauds bars Fay's contract claim.[11] Under OCGA § 13-5-30 (4), "[a]ny contract for sale of lands, or any interest in, or concerning lands" must be in writing and signed to be enforceable.[12]

Without dispute, this case involves an alleged oral agreement, not a written contract. But the writing requirement imposed by the Statute of Frauds does not apply "[w]here there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance."[13] Fay contends that the defendants orally agreed to vest him with a 30 percent interest in Custom Leasing. Although the defendants now dispute that any portion of this agreement was performed, at the time

---

[7] See *Thompson v. Kohl*, 216 Ga. App. 148, 151 (4) (453 SE2d 485) (1994).

[8] Compare *Massih v. Mulling*, 271 Ga. App. 685, 686-687 (1) (610 SE2d 657) (2005) (no enforceable contract to transfer 20 percent ownership of business to employee where details about the ownership, including when employee would receive ownership interest and how the business would be structured, were never resolved).

[9] At his deposition, Fay testified that Tucker agreed to vest him with an interest in the "building." Arguably, the agreement described by Fay was uncertain as to whether Tucker would vest in Fay an interest in the building or in Custom Leasing. Fay, however, alleged in his complaint that the agreement involved ownership of the company, and Tucker ultimately gave Fay an interest in Custom Leasing pursuant to the agreement. Construed favorably to Fay, such performance provides certainty to this portion of the alleged agreement. See *Tattersall Club Corp. v. White*, 232 Ga. App. 307, 310 (1) (b) (501 SE2d 851) (1998) (" '[P]art performance of the contract is sufficient to validate an otherwise vague and objectionable document, provided that the part performance itself relates to the contested clause.' ").

[10] (Punctuation omitted.) *Marshall*, supra at 518 (1); see also *Dover v. Mathis*, 249 Ga. App. 753, 754 (549 SE2d 541) (2001).

[11] Fay apparently agrees that the alleged oral contract should be analyzed in a Statute of Frauds context. Thus, we need not consider whether an agreement to transfer an interest in a corporate entity that owns real estate constitutes a contract for the sale of or concerning lands.

[12] OCGA § 13-5-30 (4).

[13] OCGA § 13-5-31 (3).

of Fay's termination, they admitted — through documents submitted to Fay — that Fay had been given a 20 percent interest in the company. Furthermore, after the termination, they negotiated with Fay to repurchase this interest from him.

The part performance required by OCGA § 13-5-31 (3) must be consistent with the presence of a contract and inconsistent with the lack of one.[14] In this case, the defendants' act of vesting Fay with a 20 percent interest in Custom Leasing, as well as their effort to buy back that interest after Fay's termination, are consistent with a contract to transfer an ownership interest in the company to Fay. Whether these actions are also inconsistent with the absence of such contract presents a question of fact for the jury. And the evidence supports a conclusion that any refusal by the defendants to recognize Fay's interest in Custom Leasing would be fraudulent. A jury issue thus remains as to whether the contract is enforceable under OCGA § 13-5-31 (3).[15]

We recognize that Fay contends he owns 30 percent of the company. Regardless of whether the oral contract ultimately entitles him to a 20 percent or a 30 percent share, however, the fact remains that, according to the defendants' own documents, Fay was a 20 percent owner under the agreement as of January 2002. Given these circumstances, OCGA § 13-5-30 (4) does not bar Fay's claim as a matter of law, and we reverse the trial court's grant of summary judgment on the breach of contract claim.

2. *Quantum Meruit.* Fay also argues that the trial court erred in granting the defendants summary judgment on his quantum meruit claim. In his complaint, Fay alleged that, even if the oral agreement is not enforceable, he provided valuable services to the defendants relating to the planning and construction of the Custom One office building, entitling him to "recover the reasonable value of said services." The trial court rejected this claim, finding that Fay's status as "an at-will salaried employee" precluded recovery in quantum meruit.

Again, we disagree. Fay admitted that he took part in the planning and construction of the building as part of his employment with Custom One. But he also testified that this work — which required him to act as a general contractor on the project — was outside the scope of his duties as president of a residential home

---

[14] See *R. T. Patterson Funeral Home v. Head,* 215 Ga. App. 578, 583 (1) (b) (451 SE2d 812) (1994).

[15] See id. at 584; see also *Smith v. Cox,* 247 Ga. 563, 565 (277 SE2d 512) (1981) ("It is a question for the jury as to whether there was part performance when the evidence tends to prove such performance.").

construction company. Thus, although he performed the work as a Custom One employee, he asserts that the work fell outside of his job responsibilities.

In Georgia, the reasonable value of extra work performed outside the scope of one's job duties can be recovered in quantum meruit.[16] We recognize that Fay received a base salary and bonuses as compensation for his work as president. A question of fact remains, however, as to whether he is entitled to the reasonable value of services allegedly performed outside the scope of his job duties.[17] Accordingly, the trial court erred in granting summary judgment on Fay's quantum meruit claim.

3. *Breach of Fiduciary Duty.* We agree with the trial court, however, that summary judgment was proper on Fay's breach of fiduciary duty claim. "It is well settled that mere failure to perform a contract does not constitute a tort."[18] Thus, a breach of contract claimant may only bring a tort claim where, in addition to breaching the contract, the defendant also breached a duty imposed by law.[19]

On appeal, Fay asserts that his activities while "[p]resident of and running Custom One's residential home building and development operations" gave rise to a fiduciary relationship between himself and the defendants. But even if such relationship existed, Fay has not articulated on appeal — and did not explain during the summary judgment proceedings — how the defendants breached a fiduciary duty. In his complaint, Fay vaguely stated that "[t]he actions of defendants as described herein constitute a breach of . . . fiduciary relationship." The only "actions" alleged in the complaint that might constitute a breach of duty, however, involve breach of the alleged oral agreement to transfer 30 percent of Custom Leasing to Fay. Under these circumstances, we find that Fay's tort claim arises from the alleged contractual breach, rather than breach of an independent duty, and cannot survive summary judgment.[20]

4. *Punitive Damages, Attorney Fees, and Alter Ego Liability.* Fay concedes that, if his fiduciary duty claim is not viable, he cannot recover punitive damages.[21] Given our decision in Division 3, the trial

---

[16] See *Everett v. Goodloe*, 268 Ga. App. 536, 541 (1) (b) (602 SE2d 284) (2004); *Gerdes v. Russell Rowe Communications*, 232 Ga. App. 534, 537 (3) (502 SE2d 352) (1998). Cf. *Rodriguez v. Vision Correction Group*, 260 Ga. App. 478, 479-480 (580 SE2d 266) (2003) (no claim for quantum meruit where employee admits that compensation received was reasonable and case does not contain allegation that employee performed work outside the scope of her employment).

[17] See *Everett*, supra; *Gerdes*, supra.

[18] *Servicemaster Co. v. Martin*, 252 Ga. App. 751, 754 (2) (556 SE2d 517) (2001).

[19] Id.

[20] See id.

[21] See *Trust Co. Bank v. C & S Trust Co.*, 260 Ga. 124, 126 (1) (390 SE2d 589) (1990)

court properly granted summary judgment on this claim. Moreover, Fay has presented no argument in his appellate brief supporting his claims for attorney fees and alter ego liability. Accordingly, Fay has abandoned any argument that the trial court erred in granting summary judgment on these claims.[22]

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 2, 2005.

*Dupree, Poole & King, Russell D. King,* for appellant.
*Moore, Ingram, Johnson & Steele, Tara C. Riddle, Eldon L. Basham,* for appellees.

_____

("Punitive damages are not available in actions for breach of contract.").

[22] See Court of Appeals Rule 25 (c) (2).