A06A0855. McCLUNG et al. v. ATLANTA REAL ESTATE ACQUISITIONS, LLC.
(639 SE2d 311)

MILLER, Judge.

Atlanta Real Estate Acquisitions, LLC ("AREA") filed the underlying lawsuit against Jean W. McClung and Vernell Osborne (the "Property Owners") seeking specific performance of a contract for the sale of land and damages for bad faith. The Property Owners defended on the grounds that the alleged contract failed to satisfy the Statute of Frauds and was therefore unenforceable. The trial court denied the Property Owners' motion for a directed verdict, and submitted the case to the jury, which found in favor of AREA. Following its denial of the Property Owners' motion for a judgment notwithstanding the verdict, the trial court granted AREA specific performance and awarded it $2,500 in attorney fees as bad faith damages. Following the denial of their motion for a new trial, the Property Owners filed this appeal.

The Property Owners allege as error the trial court's admission of parol evidence to prove a valid and binding contract and the denial of their motions for directed verdict, judgment notwithstanding the verdict, and new trial. They further enumerate as error the trial court's instructions to the jury on the effect of their deposit of an earnest money check and on the issue of bad faith. Finding that the trial court erred in admitting parol evidence to provide a legally sufficient description of the property at issue, and that without such evidence there was no legally enforceable contract, we reverse.

Under Georgia law, a directed verdict or judgment notwithstanding the verdict is permitted only where "there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular

verdict." (Citation omitted.) *Rose v. Cain*, 247 Ga. App. 481, 482 (1) (544 SE2d 453) (2001). Consequently, the denial of these motions will be affirmed if, viewing the record in the light most favorable to the party opposing the motions, "there is any evidence supporting the jury's verdict." Id. The threshold issue on this appeal, however, is not the sufficiency of the evidence; rather, it is whether the parol evidence rule permitted the introduction of that evidence. Inasmuch as this question is one of law, we review the trial court's decision thereon under the "plain legal error" standard. *Stephens v. Hypes*, 271 Ga. App. 863, 865 (610 SE2d 631) (2005).

Viewed in the light most favorable to AREA, the evidence shows that in 1999, AREA began planning a subdivision on land adjoining certain real property located in Cobb County and owned by the Property Owners (the "Property"). At that time, the Property totaled 3.781 acres (the "Original Tract"). Perry and Jeff McClung (Mrs. McClung's husband and son, respectively) owned a surveying business whose offices were located on the Property.

Acting through its employee, Bryan Starr, AREA retained Mc-Clung Surveying in March 2000 to survey a number of properties that it was purchasing in Cobb County. In October 2000, AREA made a written offer to purchase the Original Tract for $225,000 an acre. The offer consisted of a pre-printed "Standard Land Sales Agreement," with the relevant terms filled in. The offer stated that it was for "that tract of land as more particularly described in Exhibit 'A' attached hereto and by this reference made a part hereof." The attached Exhibit "A" was a metes and bounds home survey of the Original Tract.

AREA tendered the offer not to the Property Owners, but to Perry McClung ("Mr. McClung"), at the McClung Surveying offices. Finding the offer of $225,000 per acre to be "ridiculously low," Mr. McClung stuck the proposed contract in his desk drawer.

On November 29, 2000, the Property Owners purchased an additional piece of property adjacent to the Original Tract. This purchase increased the size of the Property to 4.218 acres.

On December 3, 2000, the Property Owners made a written offer to sell the Property to AREA for $308,203 per acre. The offer, which the Property Owners signed, consisted of the original contract proposed by AREA, with the original price of $225,000 per acre replaced with a price of $308,203 per acre. Additionally, next to the price, the words "Total Area = 4.218 ac." had been inserted in parentheses. No description of the Property was attached to the offer as an exhibit, nor was the Property otherwise described within the document.

Upon receipt of the Property Owners' proposed contract, a representative of AREA executed that document on AREA's behalf, thereby creating the agreement that is the subject of this action (the

"Final Agreement"). On December 6, 2000, Starr returned a photocopy of the Final Agreement to Mr. McClung, along with a check for $5,000 earnest money.

When Starr learned that several of the tenants living on the Property had leases that ran through the end of May 2001, he concluded that the closing date, scheduled for March 2001, should be changed. Starr therefore modified the closing provision on the Final Agreement to provide for a closing date of June 1, 2001, and initialed the change on behalf of AREA. He then left that copy of the Final Agreement with Mr. McClung, so that he could obtain the Property Owners' acceptance of the modification. The change in the closing date was never reflected on the original of the Final Agreement, retained by AREA.

While the Final Agreement did not provide any description of the Property, Starr testified that when he returned the document to Mr. McClung, either he or Jeff McClung gave him a copy of a topographical map of the Property. Starr put this map in the same envelope with the original of the Final Agreement and, at some time subsequent, wrote "Exhibit A" on the bottom of that copy of the map.

Each of the Property Owners endorsed the earnest money check and, because they had no real estate agent, deposited the funds into Mrs. McClung's bank account on December 7, 2000. Mrs. McClung then wrote Mrs. Osborne a check for one-half of these funds.

On December 16, 2000, Jeff McClung told Starr that, because of the six-month delay in closing, the Property Owners wanted more money for the Property. He presented Starr with the Property Owners' copy of the Final Agreement, on which the Property Owners had "whited out" the sale price of $308,203 per acre, and typed in the price of $375,000 per acre. Additionally, they had initialed the change in the closing date, but next to their initials were inserted the words "Subject to the changes on page 1." The Property Owners had attached a copy of the topographical map of the Property to this document.

After AREA refused the increased price for the Property, the Property Owners returned the earnest money, but AREA refused this tender. AREA subsequently demanded that the parties proceed with the closing by March 6, 2001, as called for in the Final Agreement. When the Property Owners refused to close the transaction, AREA filed the current action, alleging that the Final Agreement constituted a valid and binding contract between the parties.

1. The Property Owners contend that the trial court's admission of parol evidence to provide a legal description of the Property sufficient to satisfy the Statute of Frauds was legal error. We agree.

"To satisfy the Statute of Frauds . . . , a contract for the sale of land must be in writing and must provide a sufficiently definite description of the property to be sold." *Nhan v. Wellington Square, LLC*, 263 Ga. App. 717, 720 (1) (589 SE2d 285) (2003). Specifically, such a contract "must describe the property to be sold with the same degree of certainty as that required in a deed conveying realty." (Citations and punctuation omitted.) *Bulloch South, Inc. v. Gosai*, 250 Ga. App. 170, 172 (1) (550 SE2d 750) (2001). The legal sufficiency of such a description is a question of law, to be decided by the court. *Field v. Mednikow*, 279 Ga. App. 380, 383 (2) (631 SE2d 395) (2006).

In the absence of a legally sufficient description within the contract itself, a court may, under certain circumstances, allow the introduction of parol evidence to provide such a description. "A requirement for the admission of extrinsic evidence, however, is that the 'premises are so referred to [within the contract] as to indicate [the seller's] intention to convey a particular tract of land.'" *Field*, supra, 279 Ga. App. at 384, quoting *White v. Plumbing Distrib.*, 262 Ga. App. 228, 230 (1) (585 SE2d 135) (2003). Under those circumstances, the descriptive language in the contract functions as a "key" that opens the door to parol evidence, and such "evidence is admissible to show the precise location and boundaries of such tract." (Citations and punctuation omitted.) *Nhan*, supra, 263 Ga. App. at 721 (1). Conversely, "[i]f the land is so imperfectly and indefinitely described in the [contract] that no particular tract or lot is designated, parol evidence is not admissible to supply a description." *Durham v. Davison*, 156 Ga. 49, 54 (118 SE 736) (1923).

In this case, no adequate description of the property can be found within the four corners of the Final Agreement. The document itself states that the property to be sold is described in Exhibit "A" "attached hereto and by this reference made a part hereof." There were, however, no exhibits attached to the document at the time it was executed by either party. Thus, the topographical map that AREA contends was intended to be Exhibit "A" cannot be considered part of the contract itself. See *White*, supra, 262 Ga. App. at 229 (no sufficient legal description where "the legal description of the Property which [the] seller was to have added to the Agreement as Exhibit B" was not attached at the time the Agreement was executed).

Thus, the question is whether the Property is described in the contract in a manner that satisfies the test for admissibility of parol evidence. AREA argues that two keys provide a description of the land sufficient to satisfy this test: (1) the words "Exhibit A"; and (2) the notation that the contract was for the sale of 4.218 acres of land.[1]

---

[1] The other alleged keys cited by AREA are not found within the four corners of the contract

Given that these words offer no indication of the location of the Property, however, they are legally insufficient to permit the admission of extrinsic evidence.

To allow for the introduction of parol evidence to prove a legally sufficient description of property, language within the contract must "disclose[ ] with sufficient certainty what the intention of the [seller] was with respect to the quantity *and location* of the land" it intended to convey. (Citation and punctuation omitted; emphasis supplied.) *Hanners v. Woodruff*, 257 Ga. 73, 74 (354 SE2d 826) (1987). The case law demonstrates that if a contract contains even a vague description of the property's location, that description will open the door to extrinsic evidence. See, e.g., *Romanik v. Buitrago*, 153 Ga. App. 886 (267 SE2d 301) (1980) (extrinsic evidence allowed where contract specified general address of condominium complex, but did not identify specific condominium unit); *Essuon v. Raynor*, 231 Ga. 297 (201 SE2d 416) (1973) (extrinsic evidence allowed where contract gave street and city address for property, but did not specify county); *Faulkner v. McKelvey*, 207 Ga. 354 (61 SE2d 478) (1950) (parol evidence admissible on contract for sale of "old post office building" in Bartow County). There must, however, be some indication within the contract itself of the location of the property to be conveyed. The Final Agreement is devoid of any such intimation.

"In the absence of any description" of the Property's location, the Final Agreement fails to provide a key "which can explain or provide a precise description" of the land to be conveyed. See *McCumbers v. Trans-Columbia, Inc.*, 172 Ga. App. 275, 277 (322 SE2d 516) (1984). As this Court has previously observed, there is " 'a marked distinction between explaining an ambiguous description by parol evidence, and admitting parol evidence to supply a non-existent description.' [Cit.]" *Nhan*, supra, 263 Ga. App. at 721.

Because the Final Agreement contained neither a legal description of the Property sufficient to satisfy the Statute of Frauds, nor any language that would allow the introduction of parol evidence to supply such a description, the Final Agreement was legally unenforceable. The Property Owners, therefore, were entitled to judgment as a matter of law.

2. Having found that the Final Agreement is legally unenforceable, we also reverse the award of bad faith attorney fees against the Property Owners. AREA received these fees pursuant to OCGA § 13-6-11, which allows for the recovery of litigation expenses where

---

and are, in fact, extrinsic evidence. The law is clear that any key which opens the door to parol evidence must be found *within the contract itself*. See *Hanners v. Woodruff*, 257 Ga. 73, 74 (354 SE2d 826) (1987).

"the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." The question of whether a defendant's conduct warrants the award of such costs is usually for the jury. *Premier Cabinets v. Bulat*, 261 Ga. App. 578, 582 (583 SE2d 235) (2003). "However, a plaintiff is entitled to recover attorney fees only for that portion of the fees which [is] allocable to the attorney's efforts to prosecute a successful claim against a defendant." Id. The fact that AREA's claim fails as a matter of law, therefore, bars its recovery of attorney fees under OCGA § 13-6-11.

3. In light of the foregoing, we need not consider appellants' remaining enumeration of error regarding the trial court's instructions to the jury.

*Judgment reversed. Johnson, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 31, 2006 —
RECONSIDERATION DENIED DECEMBER 8, 2006 —

*Carol V. Clark*, for appellants.
*Chamberlain, Hrdlicka, White, Williams & Martin, Gary S. Freed, William J. Piercy, Russell E. Owens, Hall, Booth, Smith & Slover, W. Scott Henwood*, for appellee.