A07A2295. EDWARDS v. SEWELL et al.

(656 SE2d 246)

MILLER, Judge.

Dwayne Edwards sued Brooke Lamar Sewell, Jr., individually and as administrator of the estate of Brooke Lamar Sewell, Sr., among others[1] (collectively, "Sewell"), seeking specific performance of an alleged oral contract to sell real property. The parties filed cross-motions for summary judgment on the issue of whether the contract was enforceable and, if so, whether Edwards was entitled to specific performance. Edwards appeals from the trial court's order granting summary judgment to Sewell and denying his motion for summary judgment. For the reasons which follow, we affirm the trial court's denial of Edwards' motion for summary judgment and reverse the trial court's grant of summary judgment in favor of Sewell.

"To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Footnote omitted.) *Smith v. Gordon,* 266 Ga. App. 814 (1) (598 SE2d 92) (2004). See

---

[1] The complaint also named Stacey Lynn S. Thomas, Ashley L. Sewell, and Margaret Sewell as defendants.

OCGA § 9-11-56. Our review is de novo. See *Oasis Goodtime Emporium I v. Crossroads Consulting Group*, 255 Ga. App. 375, 376 (565 SE2d 573) (2002).

Viewed in a light most favorable to Edwards, the evidence shows that Sewell, Sr. and his sister, Joan Ledbetter, inherited the Cherokee County real property at issue (the "Property"). The Property consisted of four apartments rented by Sewell, Sr. and Ledbetter to third parties under oral lease agreements. Edwards began leasing one of the units in 1989 for $180 a month. Ledbetter collected rent from the tenants, including Edwards.

In March or April 1992, Edwards asked Ledbetter if she was interested in selling the Property. Ledbetter deposed that she "talked it over" with Sewell, Sr., and they decided to sell the Property for $40,000, "with us financing it." Ledbetter and Sewell, Sr. subsequently signed a letter to one of the other tenants stating that "we are selling" the Property and directing him to vacate his apartment.

On August 8, 1992, Edwards, Ledbetter, and Sewell, Sr. met at the Property to finalize the terms of the agreement for the sale. According to Ledbetter:

> Mr. Edwards agreed to purchase the property for the principal sum of $40,000 with interest on the unpaid princip[al] at the rate of 10% per annum. Payments were to be made in 144 consecutive monthly installments of $483.82 on the 8th day of each month beginning September 8, 1992. The final payment was to be made no later than October 8, 2004.

Edwards' affidavit as to the terms of the sale agreement was consistent with Ledbetter's affidavit.

The paperwork for the transaction was prepared by Sewell, Sr. During the meeting, Edwards signed at least two documents. One of the documents was a "Fixed Rate Note" payable to OJS Properties, Inc. in the principal sum of $40,000, providing for an interest rate of ten percent per annum, with principal and interest to be paid in monthly installments of $483.82 (the "Note"). Evidence showed that OJS Properties had been incorporated by Ledbetter and Sewell, Sr. for the purpose of holding title to certain real estate, including the Property, but title to the Property was never actually transferred to the corporation. Edwards also signed a "Notice of Right to Cancel" granting him the right to cancel the transaction under certain conditions by notifying OJS Properties.

Sewell, Sr. also prepared a Warranty Deed and Deed to Secure Debt that were not signed at the August 8, 1992 meeting. According to Ledbetter, Edwards had signed some of the documents when "for some reason we stopped in the middle of it." When asked if she

recalled why they stopped, Ledbetter responded that she remembered Sewell, Sr. saying "we could let him pay for it like rent to own and then we'll deed it to him later. Not get a security deed. . . ."

Edwards' account of the meeting is somewhat different. According to Edwards, he signed "whatever they brought me that day." Edwards deposed that within two or three days after the meeting, Ledbetter informed him that "we needed to fix something on the paperwork. . . ." Edwards then gave all the papers back to Ledbetter with the understanding that "all of us were going to get back together and redo everything. . . ." A second meeting, however, never occurred.

After the August 8, 1992 meeting, Edwards remained in possession of the Property while making payments under the Note until he had paid the instrument in full by October 2004. Edwards also made several improvements to the Property at a cost of more than $35,000.

Ledbetter accepted the payments on the Note from Edwards on behalf of OJS Properties and deposited the money in the corporate checking account. Sewell, Sr. was aware that Ledbetter was receiving the payments and never requested that she refuse to accept the payments on OJS Properties' behalf. Ledbetter averred that "since Mr. Edwards paid for the [Property]," she executed a quitclaim deed on January 6, 2005 conveying her one half interest to Edwards.

Meanwhile, Sewell, Sr. died intestate on October 31, 1997. On June 24, 2002, Sewell, as administrator of Sewell, Sr.'s estate, executed quitclaim deeds transferring Sewell, Sr.'s one half interest in the Property to Sewell and the other appellees. Edwards filed this action on June 15, 2005.

1. Edwards claims that the trial court erred in granting summary judgment to Sewell because he presented evidence establishing the existence of an oral contract for the sale of the Property which was excepted from the Statute of Frauds and which was enforceable by specific performance. We agree.

(a) "A contract may be enforceable even though it rests only in words as remembered by the witnesses." (Citations and punctuation omitted.) *Cline v. Lee*, 260 Ga. App. 164, 168 (1) (581 SE2d 558) (2003). Under the Georgia Statute of Frauds, however, contracts for the sale of land are required to be in writing. OCGA § 13-5-30 (4). Every essential element of the sale must be expressed in writing, and a contract for the sale of land which is partly in writing and partly in parol falls within the Statute of Frauds. *Smith v. Cox*, 247 Ga. 563 (277 SE2d 512) (1981). In an exception to the Statute of Frauds, an oral agreement for the sale of land is enforceable:

> (1) When the contract has been fully executed; (2) Where there has been performance on one side, accepted by the other in accordance with the contract; [or] (3) Where there

has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance.

OCGA § 13-5-31.

Evidence shows that Edwards performed his obligation under the alleged contract for the sale of the Property by paying the $40,000 purchase price with ten percent interest on the unpaid principal, as contemplated by the parties, through 144 consecutive monthly payments of $483.82. Where there is performance accepted by the other party to the contract, "[t]o deny the existence of the contract under such circumstances would allow the party that accepted the performance to perpetrate a fraud on the performing party." *Masters v. Redwine*, 279 Ga. 432 (1) (615 SE2d 118) (2005).

Sewell argues that even though Edwards might have made payments to Ledbetter, Edwards did not pay Sewell, Sr., and so failed to show acceptance by Sewell, Sr. Evidence showed, however, that Ledbetter was in charge of the "books" for the properties owned by Ledbetter and Sewell, Sr., and that she would take money from the renters and disburse it to OJS Properties. In this regard, Ledbetter averred that she accepted Edwards' payments on behalf of OJS Properties, that Sewell, Sr. agreed that Ledbetter was to be the party to receive payment from Edwards under the purchase agreement, and that Sewell, Sr. was aware of the arrangement and never asked that she refuse to accept payments on behalf of the corporation. Given the foregoing, a trier of fact could conclude that Edwards, Ledbetter, and Sewell, Sr. had agreed that the payment for the Property was to be made to OJS Properties, and that Sewell, Sr. accepted performance in that manner. See, e.g., *Smith*, supra, 247 Ga. at 565 (question was for the trier of fact whether there was performance when the evidence tended to show performance). It follows that there remain material issues of fact which preclude summary judgment to Sewell on the grounds that the alleged oral agreement was unenforceable by reason of the Statute of Frauds.

(b) Sewell contends that he is nevertheless entitled to summary judgment because the evidence cannot support Edwards' specific performance claim. In the context of a claim for specific performance of a parol contract for land, performance "shall be decreed" if the defendant admits the contract or if the "contract has been so far executed by the party seeking relief and at the instance or by the inducements of the other party that if the contract were abandoned he could not be restored to his former position." OCGA § 23-2-131 (a). For this purpose, "[f]ull payment alone accepted by the vendor, or partial payment accompanied with possession, or possession alone with valuable improvements, if clearly proved in each case to have

been done with reference to the parol contract, shall be sufficient part performance to justify a decree." OCGA § 23-2-131 (b). See generally *Neely v. Sheppard*, 185 Ga. 771, 775-776 (196 SE 452) (1938) (discussing application of Statute of Frauds in context of claim for specific performance of a parol contract for sale of land).

(i) As shown above, Edwards has presented evidence of full payment accepted by Ledbetter and Sewell, Sr., and thus has established an issue of material fact as to part performance under OCGA § 23-2-131 (b). Sewell nevertheless relies on the rule that specific performance of a parol contract for the sale of land requires that the performance of the complaining party contemplated by OCGA § 23-2-131 (b) be "consistent with the presence of a contract and inconsistent with the lack of a contract." (Footnote omitted.) *Rose v. Cain*, 247 Ga. App. 481, 484 (3) (544 SE2d 453) (2001). Sewell argues that Edwards was a tenant in possession before the alleged agreement to sell the Property and therefore his continued possession while making monthly payments was not "inconsistent with the lack of a contract" to sell him the Property. Id. "Monthly payments approximating rent do not . . . establish part performance of the alleged oral agreement to [ ]convey the property." Id. at 485 (3).

Here, however, Edwards' monthly payments increased from $180 a month under his previous tenancy to $483.82 after the alleged contract; he paid the same amount for 12 years; and then he stopped making such payments after the Note was paid in full. A trier of fact could conclude that this was consistent with an owner-financed sale of the Property and inconsistent with an ongoing tenancy arrangement. See *Fay v. Custom One Homes*, 276 Ga. App. 188, 192 (1) (622 SE2d 870) (2005) (it was for the trier of fact to determine whether the performance was inconsistent with the absence of a contract).

(ii) Sewell also contends that because Edwards had previously been in possession of the Property as a tenant he could not show he came into possession of the Property on account of the alleged oral contract. See *Grist v. Foster*, 246 Ga. 565, 566 (272 SE2d 297) (1980) ("[w]here a party takes possession under an oral contract to rent, and also alleged an oral option to purchase, the possession is under the tenancy and cannot also be shown to be in reliance on the option") (citation omitted). We find no merit in this argument. The rule set forth in *Grist* contemplates a claim under an oral option to purchase, while Edwards alleges payment in full in accordance with an agreement to sell. Compare id. ("Grist makes no contention that there has been a full payment.").

Furthermore, a trier of fact could conclude that Edwards was in possession under a contract to purchase rather than a lease. For example, it could be inferred that the previous rental arrangement had been terminated in light of the increase in monthly payments and

change in Edwards' possession from one unit of the Property to all of the Property. See, e.g., *Smith*, supra, 247 Ga. at 565 ("Unlike *Grist*, appellants contest appellee's assertion that they are currently in possession under the terms of a lease.").

(iii) Sewell further argues that the trial court correctly granted his motion for summary judgment because the alleged parol agreement was too vague and indefinite to be enforced by specific performance. As a rule, "[a] court of equity will not decree the specific performance of a contract for the sale of land unless there is a definite and specific statement of the terms of the contract." *Williams v. Manchester Bldg. Supply Co.*, 213 Ga. 99, 101 (1) (97 SE2d 129) (1957). "In analyzing whether an oral contract is sufficiently definite to be enforced, courts look to whether it is expressed in language sufficiently plain and explicit to convey what the parties agreed upon." (Punctuation and footnote omitted.) *Fay*, supra, 276 Ga. App. at 190 (1).

Sewell concedes that Edwards and Ledbetter have some type of agreement, and he does not question the specificity of the payment terms or the identity of the Property to which that agreement applied. He argues, however, that there is no evidence that Sewell, Sr. actually agreed to the sale of his half interest in the Property. Both Edwards and Ledbetter averred that an agreement to sell the Property was reached among Edwards, Ledbetter, and Sewell, Sr., and it can be reasonably and logically inferred that an agreement by both of the owners to sell the Property was for the sale of the entire Property and not just Ledbetter's interest in the Property. Accordingly, we conclude that the oral contract was sufficiently definite to be enforced by specific performance, and that the trial court erred in granting Sewell's motion for summary judgment.

2. Edwards also claims that the trial court erred in denying his motion for summary judgment on his claim for specific performance. We disagree.

For purposes of Division 1, supra, we viewed the evidence in the light most favorable to Edwards as the nonmovant. But viewed in the light most favorable to Sewell as the nonmovant, the evidence does not show that Edwards is entitled to summary judgment. Issues of fact remain as to whether Sewell, Sr. accepted performance through payments received by Ledbetter and whether, in light of Edwards' previous tenancy, Edwards' performance was inconsistent with the lack of a contract to sell the Property. Accordingly, the trial court's denial of Edwards' motion for summary judgment on his specific performance claim is affirmed.

*Judgment affirmed in part and reversed in part. Barnes, C. J., and Smith, P. J., concur.*

DECIDED JANUARY 8, 2008.

*Dyer & Rusbridge, Samuel J. Rusbridge, Jordan J. Hendrick,* for appellant.
*Neville & Cunat, John R. Neville,* for appellees.

## A07A2488. CICCIO v. CITY OF HEPHZIBAH.
### (656 SE2d 245)

MILLER, Judge.

In November 2006, the Hephzibah City Commission (the "Commission") voted to remove Peter Ciccio from his post as a member of the Commission based on the removal provisions contained in the Charter of the City of Hephzibah (the "Charter"). Following a hearing, the trial court affirmed the Commission's decision to remove Ciccio from his post. Ciccio appeals, claiming that the trial court erred in determining that the Charter authorized his removal as a Commissioner based on the undisputed facts. We agree and reverse.

"When a question of law is at issue, as here, we owe no deference to the trial court's ruling and apply the 'plain legal error' standard of review." (Citation omitted.) *Suarez v. Halbert,* 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000). So viewed, the undisputed facts show that Ciccio was elected to the Commission in November 2003, and he took office in January 2004. One month later, on February 10, 2004, Ciccio was charged with theft by receiving, based on acts he was alleged to have committed in 2003. In October 2006, Ciccio pled guilty to theft by receiving, and he was sentenced (without an adjudication of guilt) to five years of probation under the First Offender Act. OCGA § 42-8-60 et seq. At that time, Ciccio admitted that he had facilitated the sale of a tractor that had no certificate of origin, bill of sale, or keys, and that he should have known the tractor had been stolen.

On November 10, 2006, and as a result of Ciccio's admission of guilt, the Commission voted unanimously to remove him from his post pursuant to the removal provisions of the Charter. The trial court affirmed Ciccio's removal, finding that "[w]hile there is clearly nothing that would require the Commission to remove . . . Ciccio, they were [with]in their legal authority to do [so]."

Ciccio claims that the removal provisions of the Charter did not authorize the Commission to remove him from his position as a duly-elected member of the Commission. We agree.

Section 19 of the Charter provides that any member of the Commission may be removed, subject to notice and a hearing, upon