A02A0345. OASIS GOODTIME EMPORIUM I, INC. v. CROSSROADS CONSULTING GROUP, LLC.
(565 SE2d 573)

BLACKBURN, Chief Judge.

In this breach of contract action, Oasis Goodtime Emporium I, Inc. ("Oasis") appeals from the trial court's grant of summary judgment to Crossroads Consulting Group, LLC ("CCG"). Oasis contends that material issues of disputed fact necessitate resolution by a jury. Notwithstanding this claim, we affirm because Oasis failed to refute CCG's evidence that established Oasis' breach and the amount of damages due to CCG as a consequence of that breach.

On appeal from a trial court's grant of summary judgment, this Court conducts a de novo review of the evidence. *Entertainment Sales Co. v. SNK, Inc.*[1] On summary judgment, after the movant makes a prima facie showing of its entitlement to judgment as a matter of law, the burden then shifts to the respondent to come forward with rebuttal evidence. *Kelly v. Pierce Roofing Co.*[2] To do so, the respondent must set forth specific facts showing the existence of a genuine issue of disputed fact. OCGA § 9-11-56 (e). This Oasis failed to do.

When viewed in the light most favorable to Oasis as the respondent, the record shows that Guy Ron Holcomb, while company president and sole shareholder of Oasis, an adult entertainment business, decided to undertake a project that would result in the creation of an adult Internet system for Oasis. Holcomb hired Lauren M. Hines as the project manager of the website. Oasis planned to offer to its subscribers or customers adult theme videos and "live" chat room programs using performers at its club. But, during the development phase of the project, problems were encountered in fashioning the interactive component and in creating a workable firewall security system to prevent unauthorized access.

Oasis turned to CCG for assistance, and in late April 1998, Hines approved a work order for CCG to provide consulting services that included "discovery to establish a system plan for the Oasis Harem website." On May 22, 1998, Holcomb signed another work order for additional consulting services by CCG including "to deliver a working prototype of a customer chat system, demonstrating the integration of live video and chatting in a web browser." The work order projected that between May 20, 1998, and July 15, 1998, Oasis would require consulting services estimated at $23,625. On May 28, 1998, Hines approved an additional payment of $11,943 to CCG for an audit and firewall installation.

According to Hines, due to unforeseen problems largely attributable to system configuration and software incompatibility, the project required more time than anticipated. By the end of the summer, Oasis had not paid the first 20 invoices issued by CCG, and CCG was threatening to cease work unless it was paid. As a result, in October 1998, Holcomb, Hines, and CCG's senior manager, Mark Munson, and Tom Dixon, computer project manager and consultant at CCG, met to discuss the situation. At the meeting, they reached a new agreement in which CCG would continue to work without demanding full payment of the arrearage and Oasis would make regular payments to CCG of $5,000 per week.

---

[1] *Entertainment Sales Co. v. SNK, Inc.*, 232 Ga. App. 669 (502 SE2d 263) (1998).
[2] *Kelly v. Pierce Roofing Co.*, 220 Ga. App. 391, 392-393 (2) (469 SE2d 469) (1996).

Hines testified that on January 28, 1999, she personally told Holcomb that CCG had completed the job and the website was ready to operate. She testified that the plan was to start up the website on Valentine's Day, after Oasis engaged in certain promotional activity for it. According to Hines, delivery and final payment were scheduled to occur on February 14, 1999. Holcomb, however, suffered an untimely death on February 2, as the result of a motor vehicle accident.

It is undisputed that Barbara Holcomb, who succeeded Ron Holcomb as the sole shareholder in Oasis, decided to terminate the website project. Hines testified without dispute that Barbara Holcomb did not accept her offer to demonstrate the functioning of the site. Marion Wayne Stewart, Oasis' accountant, testified that he participated in a decision made at the February 1999 meeting to abandon the website project. Stewart testified that due to the delay in its implementation, the concept was no longer viable since competitors were already on line with similar ventures. Stewart testified that even had the website been completely ready, he would have recommended against it because it was no longer a good business decision. Stewart testified that this opinion was "[s]hared by Barbara Holcomb." After the February 1999 meeting, Hines' services at Oasis were terminated.

CCG submitted billing to Oasis for a total in the amount of $119,144.66, that included 1,125 hours of consultant time and material charges of $7,997.80. Of that total, Oasis paid $24,096.08. After efforts to obtain the unpaid balance proved fruitless, CCG sued Oasis for breach of contract.

CCG sought summary judgment. CCG supported its motion with work orders, billing documents, affidavits, and depositions. In addition to Hines, John Polascik and Dixon also testified that CCG had completed a working prototype by January 1999. Polascik, the primary developer at CCG of the site, provided detailed testimony about the development and features of the site. Polascik testified that by late January 1999, "CCG had completed all of the programming on the Oasis Web Site Project, i.e., for the chat room, live video and e-commerce (or payment acceptance) features of the Oasis Web Site, and that the Oasis Web Site was ready to 'go live' (i.e., to activate the Oasis Web Site on the Internet) subject only to receiving certain information from Oasis." Polascik also testified that as part of his duties, he, along with Hines, conducted a series of tests in late January, the results of which showed that "the system was fully workable and ready to go live." According to Polascik, "Lauren and I planned to re-run the testing demonstration and launch the system into production shortly thereafter for Mr. Holcomb, but he died before we could run that follow-up demonstration for him." Dixon also worked on the

project. Dixon, who observed the January 1999 testing, also avowed that the system was "fully workable and ready to go live."

To attempt to refute this evidence and to create a disputed issue as to whether the website had, in fact, been functional, Oasis offered the affidavit of Chris Martin, a computer consultant and friend of Brian Holcomb, son of Ron and Barbara Holcomb. Martin testified that at the family's request he was in attendance at the meeting in February 1999. According to Martin, immediately after the meeting, Brian Holcomb and he had examined and tested the website. Martin testified that the website was not operational. According to Martin, "[t]he web site would not allow interaction, meaning there was no way to pay with a credit card, or view any of the videos, or exchange information in the chat room." Martin testified that the website did not work but served only as an advertisement informing would-be users that the website was under construction. Martin voiced his opinion that the website "was not complete, workable or ready to 'go live' in February 1999 at the time it was terminated."

After conducting a hearing and reviewing the evidence, the trial court entered detailed findings, including that Oasis had breached its contract with CCG by failing and refusing to pay CCG for its services. Noting that the contract had been modified by mutual agreement in October 1998, the trial court observed that there was no scheduled date for completion and no cap on the dollar amount for the services provided by CCG. The trial court decided that CCG's work on the website had been authorized by Oasis and was "reasonable and necessary" to the project. In light of Oasis' breach, the trial court entered an order that awarded the unpaid balance of $95,048.58 plus interest to CCG.

In its sole enumerated error, Oasis contends that material issues of disputed fact precluded summary judgment. Oasis argues that CCG never delivered the product and did not abide by the contract terms. Specifically, Oasis claims that CCG breached the agreement by failing to complete the project by July 18. Oasis further claims that "CCG never delivered a working prototype of a customer chat system, demonstrating the integration of live-video and chatting in a web browser" as the contract required.

Without question, the parties entered an agreement for CCG to engage in development of the website for Oasis. Oasis' sole evidence that CCG failed to fulfill its contractual obligations is the affidavit of Martin. But the trial court found Martin's affidavit superfluous and so do we because Martin did not examine and test the final product and whatever tests he did perform were conducted at a different and later time from those of Hines and Polascik. Hines, Polascik, and Dixon each testified that the system was operational in January, while Martin claimed to have tested it in February. Moreover, since it

is undisputed that Oasis aborted the project and declined delivery of the completed prototype, it is not clear how Martin could have performed any tests on the completed system. After Oasis elected to disclaim the contract, the prototype was never installed on the website that Martin purportedly tested. As the trial court noted,

> Despite Oasis' renewed payment default, CCG, in late January, 1999, completed a fully workable and ready to go live Website, thereby creating a working prototype of the Website. This fact is undisputably established of record by the affidavit testimony of representatives from both parties who personally participated in the testing of the Website in late January, 1999: Lauren Hines of Oasis and John Polascik of CCG. There is no admissible evidence of record to contradict the sworn affidavit testimony of Hines and Polascik that as of late January, 1999, the Website was "fully workable and ready to go live."

In a footnote, the trial court observed, "Mr. Martin does not state what he did to test the Website, and whether he knew the appropriate codes or steps to perform such a test." As to Martin's affidavit, we note that it is axiomatic that "[i]n passing upon a motion for summary judgment, a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists." (Citation and punctuation omitted.) *Birnbrey, Minsk &c. v. Yirga.*[3]

Oasis also asserts that there are significant inconsistencies and major discrepancies between the affidavit of Hines and her report dated February 19, 1999. Citing the *"Prophecy*[4] *rule"* as explained in *Thompson v. Ezor,*[5] Oasis claims that Hines' self-contradictory testimony should be ignored for purposes of summary judgment. Oasis points out that in her affidavit, Hines testified that in late January 1999, the website was ready to "go live" but in her written report in February, Hines seemed to say otherwise. In her report, Hines stated the following:

> Currently all programming required for chat, live video and payment acceptance has been completed. There are system issues that CCG and Lauren Hines agree need to be addressed. All problems that have been encountered have been determined to be system related. At this time the sys-

---

[3] *Birnbrey, Minsk &c. v. Yirga*, 244 Ga. App. 726, 728 (1) (535 SE2d 792) (2000).
[4] *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986).
[5] *Thompson v. Ezor*, 272 Ga. 849, 851 (1) (536 SE2d 749) (2000).

tem is believed to be stable enough to proceed with going live on-line pending a few software, web page and system corrections.

Pretermitting the question as to whether Hines was, in fact, a "party witness," having examined the affidavit and the report, we find the "self-contradictory testimony rule" does not apply since the report does not fit within the ambit of "testimony."[6] See id. at 851-852 (2). Nothing in the report indicates that CCG did not perform any of its assigned tasks. In any event, Polascik avowed that testing demonstrated that "the system was fully workable and ready to go live." Similarly, Dixon, who observed the January testing, vouched for the same in his testimony.

Thus, the record supports the finding that CCG fully performed on the parties' agreement but was only partially paid for its services. In fact, Oasis conceded in its brief that no payments were made to CCG after December 2, 1998. In light of Oasis' breach, CCG was entitled to be placed in the position it would have occupied but for that breach. See *Gainesville Glass Co. v. Don Hammond, Inc.*[7] The amount of damages was readily calculable, arose from services provided by CCG during the fulfillment of the contract, and was supported by competent evidence. See *Crawford & Assoc. v. Groves-Keen, Inc.*[8] Based on the foregoing, the trial court properly entered judgment for CCG.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED MAY 15, 2002.

*Richard A. Gordon, Cammi R. Jones*, for appellant.
*Ellis, Funk, Goldberg, Labovitz & Dokson, Robert N. Dokson, David A. Webster*, for appellee.

---

[6] Oasis offered evidence indicating that Hines was paid as an independent contractor and was not an employee.

[7] *Gainesville Glass Co. v. Don Hammond, Inc.*, 157 Ga. App. 640, 644 (1) (278 SE2d 182) (1981).

[8] *Crawford & Assoc. v. Groves-Keen, Inc.*, 127 Ga. App. 646, 650 (194 SE2d 499) (1972).