A06A1442. SIERRA CRAFT, INC. v. T. D. FARRELL
CONSTRUCTION, INC.
(638 SE2d 815)

BERNES, Judge.
This case requires us to resolve several questions relating to a payment bond obtained and recorded by appellee T. D. Farrell Construction, Inc. ("Farrell") as part of the construction of a Wal-Mart Superstore in Decatur. We reverse the trial court's declaration that appellant Sierra Craft, Inc. d/b/a Pacific Fire Protection ("Sierra") was limited to claiming $20,000 under the payment bond, the specific amount listed in Sierra's notice to contractor that was sent to Farrell. We also reverse the trial court's declaration that the payment bond served as substituted collateral for the construction project and discharged the materialmen's lien filed by Sierra, since we conclude that the payment bond did not meet the statutory requirements of a lien release bond. We affirm in all other respects.

Appellee Farrell was the general contractor for the Wal-Mart construction project. Pursuant to its contractual obligations with Wal-Mart, Farrell obtained and recorded a payment bond for $7,603,103, which represented the full amount of Farrell's contract price for the construction work. The surety on the payment bond was Travelers

Casualty and Surety Company of America ("Travelers"). The payment bond was for the benefit of all persons supplying labor, materials, supplies, services, utilities and equipment in the prosecution of the work provided under the construction contract. The payment bond explicitly stated that "any of such persons or entities may maintain independent actions upon this [b]ond. . . ."

Farrell subcontracted with The VP Group for provision of a fire sprinkler for the construction project. In turn, The VP Group allegedly ordered and received fire sprinkler pipes, valves, and fittings for the project from appellant Sierra. Consequently, Sierra sent Farrell a notice to contractor in which it maintained that it was providing fire sprinkler materials for the project for a contract price of $20,000 in connection with improvements being made by The VP Group.

Ultimately, The VP Group failed to complete construction of the fire sprinkler system or to fully compensate Sierra for the materials it received.[1] Sierra subsequently sent a letter to Farrell and Travelers asserting that Sierra had provided materials to The VP Group for use on the project, that Sierra was owed $79,692.10, and that Sierra was demanding payment by Farrell and Travelers under the payment bond. Sierra also filed a $79,692.10 claim of materialmen's lien against the project property.

Thereafter, Farrell filed a complaint against Sierra for declaratory judgment. Among other things, Farrell sought a declaration that any claim or lien by Sierra against the project was limited to $20,000, the amount specified in Sierra's notice to contractor. Farrell also sought a declaration that the payment bond served as substituted collateral for the real estate underlying the project, and that, as a result, Sierra's lien claim was discharged by the bond.

Sierra answered and asserted a counterclaim for monies owed under the payment bond. Sierra also successfully moved to add Travelers as a counterclaim defendant, and Travelers then asserted its own counterclaim against Sierra for declaratory judgment. Finally, Sierra moved to dismiss Farrell's and Travelers' claims for declaratory judgment and moved for summary judgment on its counterclaim.

After conducting a hearing, the trial court entered an order denying Sierra's motion to dismiss and motion for summary judgment. In its order, the trial court also declared that Sierra's payment bond claim was limited to $20,000, that the bond served as substituted collateral for the construction project, and that the bond

---

[1] The VP Group also failed to answer in this lawsuit and is in default as to all claims asserted against it.

discharged the materialmen's lien filed by Sierra. It is from this order that Sierra now appeals.[2]

1. Sierra claims that the trial court erred in denying its motion to dismiss the declaratory judgment action because Farrell did not face uncertainty or insecurity with respect to its rights. We disagree.

The purpose of the Declaratory Judgment Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." (Citation and punctuation omitted.) *Morgan v. Guaranty Nat. Cos.*, 268 Ga. 343, 344 (489 SE2d 803) (1997); OCGA § 9-4-1. A controversy is justiciable so as to entitle a plaintiff to declaratory relief if the interested parties assert adverse claims upon an accrued state of facts. See *Lott Investment Corp. v. City of Waycross*, 218 Ga. 805, 807 (1) (130 SE2d 741) (1963); OCGA § 9-4-2 (a). Furthermore, superior courts are entitled to enter declaratory judgment

> to determine and settle by declaration any justiciable controversy of a civil nature where it appears to the court that the ends of justice require that such should be made for the guidance and protection of the petitioner, and when such a declaration will relieve the petitioner from uncertainty and insecurity with respect to his rights, status, and legal relations.

(Citation, punctuation and footnote omitted.) *East Beach Properties v. Taylor*, 250 Ga. App. 798, 802 (3) (552 SE2d 103) (2001). In contrast, declaratory relief is not available

> where the rights of the parties have already accrued and there are no circumstances showing any necessity for a determination of the dispute to guide and protect the plaintiff from uncertainty and insecurity with regard to the propriety of some future act or conduct, which is properly incident to his alleged rights and which if taken without direction might reasonably jeopardize his interest. . . .

*Morgan v. Guaranty Nat. Cos.*, 268 Ga. at 344.

Here, the record reflects that Farrell faced uncertainty as to the legal effect of the payment bond, namely, whether it served as substitute collateral that discharged Sierra's lien claim. Farrell also faced uncertainty as to whether Sierra's claim was limited to the specific amount Sierra had set forth in its notice to contractor.

---

[2] Farrell claims that Sierra has not appealed the declaratory relief granted by the trial court to the extent that it applied to Travelers, the payment bond surety. Sierra's notice of appeal, however, belies Farrell's claim.

Farrell needed direction on these issues to determine whether it had to take additional steps to secure a different type of payment bond in order to properly discharge Sierra's lien (see OCGA § 44-14-364, discussed infra), and also so that it could clarify its potential indemnification obligations and/or liability to Wal-Mart under the construction project contract. Accordingly, the trial court did not err in denying Sierra's motion to dismiss the declaratory judgment action filed by Farrell. See, e.g., *Adams v. City of Ila*, 221 Ga. App. 372, 373 (2) (471 SE2d 310) (1996) (plaintiff needed the "lights turned on before stepping into darkness, and a declaratory judgment was the proper remedy") (citation and punctuation omitted). Compare *Drawdy v. Direct Gen. Ins. Co.*, 277 Ga. 107 (586 SE2d 228) (2003) (insurer had already denied coverage for the claims at issue, and therefore declaratory judgment was not available because the insurer was neither uncertain nor insecure in regard to its rights, status or legal relations).

2. Sierra contends that the trial court erred in declaring that Sierra's claim on the payment bond was limited to $20,000, the specific amount set forth in Sierra's notice to contractor that was sent to Farrell. We agree.

> OCGA § 10-7-31 (a) requires that persons entitled to claim the protection of a payment bond who do not otherwise have a contractual relationship with the contractor furnishing the payment bond must deliver a notice to the contractor in accordance with the statute's provisions. Otherwise, such persons "shall not have the right to bring an action on such payment bond . . . in accordance with the terms thereof." Id. . . . OCGA §[ ] 10-7-31 . . . , however, impose[s] a separate duty on the contractor to file a "notice of commencement" with the superior court in which the project is located, and a contractor's failure to file the notice of commencement renders the notice-to-contractor requirements inapplicable. OCGA §[ ] 10-7-31 (c).

*Consolidated Pipe & Supply Co. v. Genoa Constr. Svcs.*, 279 Ga. App. 894, 895-896 (633 SE2d 59) (2006).

Farrell filed a notice of commencement with the Clerk of the Superior Court of DeKalb County, and Sierra sent Farrell a notice to contractor. The respective notices disclosed the information required under OCGA § 10-7-31, although the notice of commencement stated that it was "[p]ursuant to OCGA § 44-14-361.5" and the notice to contractor stated that it was "being sent in accordance with OCGA § 44-14-361." These latter two statutory provisions address materialmen's liens, not payment bonds.

The trial court declared that Farrell's notice of commencement and Sierra's notice to contractor complied with OCGA § 10-7-31. We agree. OCGA § 10-7-31 does not require that either the notice of commencement or notice to contractor be expressly labeled as being provided under that statute. The given notices contained the pertinent information contemplated by OCGA § 10-7-31, including that Farrell had provided a payment bond on the project and that Sierra was providing materials for the project through improvements made by The VP Group. Furthermore, the indexing requirements imposed on superior court clerks as to notices of commencement under OCGA §§ 10-7-31 (d) and 44-14-361.5 (e) are substantially identical, and we see no indication that Farrell's notice of commencement was misfiled for purposes of OCGA § 10-7-31 (d) because it was labeled as provided under OCGA § 44-14-361.5.

We disagree, however, with the trial court's conclusion that Sierra's notice to contractor limited the extent of its claim under the payment bond. OCGA § 10-7-31 (a) (4) provides that the notice to contractor must include: "A description of the labor, material, machinery, or equipment being provided and, if known, the contract price or anticipated value of the labor, material, machinery, or equipment to be provided or the amount claimed to be due, if any." Sierra's notice to contractor stated that the contract price for its provision of materials for the project was $20,000. The parties do not contend that the contract price was inaccurate at the time it was disclosed.

For three reasons, we conclude that OCGA § 10-7-31 (a) (4) does not limit the future claims of a notifying supplier, such as Sierra, to the contract amount stated in its notice to contractor. First, the statute does not expressly provide that the notifying party's future claims are limited by the contract price given in the notice. Second, the notice to contractor must be given no later than 30 days after the notifying party first provides labor or material or 30 days after the notice of commencement, whichever is later. OCGA § 10-7-31 (a). Among other disclosures, the notifying party must "if known" give a contract price or an anticipated value. OCGA § 10-7-31 (a) (4). Thus, the defining element of the notice is that it be timely given soon after the work begins, not that the contractor be apprised of the exact value of material or services ultimately to be provided for the project. Third, the statute does not contemplate a second notice to update the contractor if a contract price or anticipated value changes, which further indicates that it is not the intent of the notice procedure to establish the exact limits of a notifying party's future claim. Accordingly, we conclude that the trial court erred in limiting Sierra's claim under the payment bond to the specific amount set forth in its notice to contractor.

Nevertheless, Farrell emphasizes that Sierra had the option to list either a contract price or an anticipated value in its notice, and that Sierra chose to notify Farrell of a fixed contract price. Farrell maintains that it was therefore entitled to rely on the contract price as the amount of Sierra's potential claim under principles of equitable and promissory estoppel. We are unpersuaded.

In order for a plaintiff to succeed on a claim of promissory estoppel, the plaintiff must establish that

(1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.

*Rental Equip. Group v. MACI,* 263 Ga. App. 155, 157 (1) (b) (587 SE2d 364) (2003). Farrell failed to satisfy these elements, including that Sierra made a promise to Farrell, as opposed to a mere representation of fact. See *American Casual Dining v. Moe's Southwest Grill,* 426 FSupp.2d 1356, 1371-1372 (III) (F) (N.D. Ga. 2006) (applying Georgia law).

As to equitable estoppel, Farrell relies on OCGA § 23-1-14, which provides that "[w]hen one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss." This principle is inapplicable under the present circumstances. While The VP Group may have inflicted injury upon both Sierra and Farrell, Sierra's statutory notice to contractor is not what put The VP Group in a position to fail in completing its fire sprinkler work or to fail in paying Sierra for materials. See generally *Nowell v. Mayor &c. of Monroe,* 177 Ga. 648, 656 (171 SE 136) (1933) (the rule enunciated in OCGA § 23-1-14 does not apply "where no fault or negligence is imputable to the party sought to be held thereby").

Based on the foregoing, we conclude that Sierra's claim, if any, under the payment bond is not limited by the contract price stated in its notice to contractor. The trial court erred in reaching the opposite result.

3. Sierra contends that the trial court erred by declaring that the payment bond obtained and recorded by Farrell served as substituted collateral for the construction project and discharged the material-men's lien filed by Sierra. Again, we agree with Sierra.

As an initial matter, Farrell shows no relevant statutory provisions that provide that the posting of a payment bond serves as

substituted collateral and discharges a materialmen's lien. In particular, OCGA § 10-7-31 addresses notices of commencement for payment bonds and the rights of certain parties claiming protection under payment bonds, but it is silent on the issue of how or whether the bond affects materialmen's liens. In contrast, the specific requirements of a lien release bond are explicitly addressed in a separate provision, OCGA § 44-14-364. If a lien release bond is properly obtained and recorded under that statutory provision, "the bond stands in the place of the real property as security for the lien claimant." *Few v. Capitol Materials*, 274 Ga. 784, 786 (1) (559 SE2d 429) (2002). See also *Hoffman Elec. Co. v. Chiyoda Intl. Corp.*, 203 Ga. App. 731, 733 (417 SE2d 371) (1992). Thus, the relevant inquiry is whether the payment bond obtained and recorded by Farrell met the requirements of a lien release bond under OCGA § 44-14-364.

OCGA § 44-14-364 (a) provides:

> When any person entitled under this part to claim a lien against any real estate located in this state files his lien in the office of the clerk of the superior court of the county in which the real estate is located, the owner of the real estate or the contractor employed to improve the property may, before or after foreclosure proceedings are instituted, discharge the lien by filing a bond in the office of that clerk. The bond shall be conditioned to pay to the holder of the lien the sum that may be found to be due the holder upon the trial of any action that may be filed by the lienholder to recover the amount of his claim within 12 months from the time the claim becomes due. The bond shall be in double the amount claimed under that lien and shall be either a bond with good security approved by the clerk of the court or a cash bond. . . . Upon the filing of the bond provided for in this Code section, the real estate shall be discharged from the lien. . . .

Having reviewed the payment bond obtained and recorded by Farrell, we conclude that it does not meet the specific requirements of OCGA § 44-14-364 (a). The language of the statute clearly contemplates that the bond at issue will be filed in cognizance of a preexisting lien claim and will be specifically tailored to apply to that claim. Yet, the bond at issue here was obtained *before* Sierra filed its lien claim, and thus was not specifically "conditioned to pay to [Sierra] the sum that may be found to be due [Sierra] upon the trial of any action that may be filed by [Sierra]," and was not for the amount "double the

amount claimed under *that* lien." (Emphasis supplied.) Id.[3] Additionally, contrary to OCGA § 44-14-364 (a), there is nothing in the record indicating that the bond obtained by Farrell was issued with "good security approved by the clerk." Id. As such, we conclude the bond did not satisfy the requirements of a lien release bond under OCGA § 44-14-364.

Farrell argues that it substantially complied with OCGA § 44-14-364. It is true that, generally speaking, "[w]hen there is actual compliance as to all matters of substance then mere technicalities of form or variations in the mode of expression should not be given the stature of noncompliance." (Footnote omitted.) *Harvey v. Meadows*, 280 Ga. 166, 168 (3) (626 SE2d 92) (2006). But, the specific statutory requirements of OCGA § 44-14-364 discussed above which Farrell did not meet were substantive and essential requirements of the statute, not mere technicalities.

For the foregoing reasons, we conclude that the payment bond obtained and recorded by Farrell did not meet the statutory requirements of a lien release bond under OCGA § 44-14-364. It follows that Sierra's lien claim on the property, if any, was not discharged or precluded by Farrell's filing of the payment bond with the clerk of the superior court, and that the trial court erred in declaring otherwise.

4. Finally, Sierra claims that the trial court erred in denying its motion for summary judgment on its claim under the payment bond. We disagree.

"To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Footnote omitted.) *Smith v. Gordon*, 266 Ga. App. 814 (1) (598 SE2d 92) (2004). Our review of the evidence is de novo. See *Oasis Goodtime Emporium I v. Crossroads Consulting Group*, 255 Ga. App. 375, 376 (565 SE2d 573) (2002).

Terri Keown, Sierra's credit manager, averred that Sierra sold materials to The VP Group for use at the project in the "principal amount" of $79,692.10, and that true and accurate copies of Sierra's invoices for these materials were attached to the affidavit. Keown further averred that Sierra has not been paid by The VP Group. Thus, Sierra contends that it is an unpaid supplier of materials to the project and entitled to make a claim under the payment bond. Farrell responds that issues of material fact remain as to whether materials

---

[3] It is true that the initial amount of the bond obtained by Farrell exceeded twice the amount of Sierra's claim, but the bond was also issued for the benefit of any other potential lien claimants who might arise. Thus, there was no real assurance to any particular future claimant (such as Sierra) that the bond would remain available in twice the amount of its claim.

supplied by Sierra to The VP Group were incorporated into the project. We agree with Farrell.

Keown's affidavit and attached invoices showing that materials were shipped to The VP Group for use at the project job site creates a rebuttable presumption that Sierra's materials were received and used by The VP Group for Farrell's benefit. *Williamscraft Dev. v. Vulcan Materials Co.*, 196 Ga. App. 703, 704 (1) (397 SE2d 122) (1990). However, Jeff Aldridge, who was employed as Farrell's manager at the project site, averred that The VP Group removed materials and supplies from the project that had been previously delivered. According to Aldridge, Farrell's contract with The VP Group for work at the project was $153,387.90. Farrell paid The VP Group $62,449.11. Farrell paid others $92,835.70 to complete The VP Group's work. In completing the work, the supplemental contractor used some of its own materials and some materials provided by The VP Group. Farrell then received $115,849.62 in claims from unpaid suppliers of The VP Group, including Sierra.

Viewed in the light most favorable to Farrell as nonmovant, the evidence reflects that The VP Group's contribution in labor and materials to the project was less than Sierra's claim for materials incorporated into the project, and it can therefore be inferred that The VP Group neglected to incorporate into the project all of the materials invoiced by Sierra. Hence, a material issue of fact remains as to whether Sierra supplied $79,692.10 in materials to the project as it claims. It follows that the trial court did not err in denying Sierra's motion for summary judgment.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 14, 2006 — ▮▮▮▮▮▮▮▮▮

*David J. Merbaum*, for appellant.

*Stites & Harbison, J. D. Humphries III, Ronald J. Stay, Jr., Erin Dougherty*, for appellee.